# IN THE UNITED STATES DISTRICT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *et al.* | § | |
| *ex rel.* MISTY WALL, Relator, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:07-CV-604-M |
| | § | |
| VISTA HOSPICE CARE, INC. d/b/a | § | |
| VISTACARE, VISTACARE, INC. and | § | |
| ODYSSEY HEALTHCARE, INC., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' Motion to Dismiss pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure [Docket Entry #39], Defendants' Request for Judicial Notice [Docket Entry #40], and Relator's Request for Judicial Notice [Docket Entry #47]. The Requests for Judicial Notice are both **GRANTED**. For the reasons stated below, the Motion to Dismiss is **GRANTED** in part and **DENIED** in part.

### BACKGROUND AND PROCEDURAL HISTORY

I.     **Relator's Allegations**

This is a *qui tam*[1] action brought by Relator Misty Wall, on behalf of the United States and the States of Indiana, Massachusetts, Nevada, New Mexico, and Texas, against Defendants Vista Hospice Care, Inc. and VistaCare, Inc. (together "VistaCare")[2] and Odyssey Healthcare,

---

[1] Under the False Claims Act, an action can be commenced either by the United States itself, or as a *qui tam* action, by a private person, or "relator," acting "for the person and for the United States Government" against the alleged false claimant "in the name of the Government." 31 U.S.C. § 3730(b). *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 768 (2000).

[2] According to Wall's Amended Complaint, Odyssey Healthcare, Inc. ("Odyssey") acquired VistaCare on March 6, 2008, and has continued VistaCare's operations. Because Wall was terminated from her job on April 8, 2005,

Inc., for damages and civil penalties under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, and relevant state false claims laws. The FCA prohibits, in relevant part, the knowing presentment to the government of a false or fraudulent claim,[3] and the knowing use of a false record or statement material to a false or fraudulent claim to obtain payment from the government.[4] Defendants provide hospice services in fourteen states and submit Medicare and Medicaid claims for payment for such hospice services.

Wall, a social worker who was employed at VistaCare's Denton, Texas office from April 2003 until April 8, 2005, alleges that in violation of federal and state false claims laws, VistaCare (1) improperly enrolled and sought reimbursement from Medicare and Medicaid for hospice services for patients who were not eligible for hospice care; (2) failed to provide required services to VistaCare patients to maximize profit from per-diem payments from Medicare and Medicaid; (3) made false Medicare and Medicaid claims for unnecessary medical equipment; (4) provided illegal kickbacks to patients, referring organizations and suppliers; and

---

before Odyssey's acquisition of VistaCare, in this Opinion, the Court refers to all of the Defendants collectively as VistaCare.

[3] 31 U.S.C. § 3729(a)(1) (2008) (amended 2009) (current version at 31 U.S.C. § 3729(a)(1)(A) (2009)) (the "presentment theory"). On May 20, 2009, Congress enacted the Fraud Enforcement Recovery Act of 2009 ("FERA"), which amended the FCA, and reorganized various subsections. *See generally* Pub. L. No. 111-21, § 4; 123 Stat. 1617 (2009). The amendment generally applies to conduct on or after May 20, 2009. Pub. L. No. 111-21, § 4(f)(1), 123 Stat. at 1625. The Amended Complaint alleges conduct that occurred before the amendment, and therefore, any reference to the "presentment theory" or "§ 3729(a)(1)" will be to the pre-FERA provision. The pre-FERA definition of "claim" includes "any request or demand, whether under a contract or otherwise, for money or property . . . if the United States Government provides any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(c) (2008) (amended 2009) (current version at 31 U.S.C. § 3729(b)(2) (2009)).

[4] 31 U.S.C. § 3729(a)(2) (2008) (amended 2009) (current version at 31 U.S.C. § 3729(a)(1)(B) (2009)) ("false record theory"). Pre-FERA, the false record provision prohibited the knowing use of a "false record or statement to get a false or fraudulent claim paid or approved by the government." Under FERA, the provision prohibits the knowing use of a "false record or statement *material to a false or fraudulent claim.*" *Id.* (emphasis added). While FERA applies to conduct on or after the date of enactment, the amendment expressly provides that the false record theory "shall take effect as if enacted on *June 7, 2008*, and applies to all *claims* . . . that are pending *on or after that date*." Pub. L. No. 111-21, § 4(f)(1), 123 Stat. at 1625 (emphasis added). The Fifth Circuit recently stated that if a complaint under the FCA was pending on June 7, 2008, FERA applies to actions under the false record provision, even if the payment request was made before June 7, 2008. *See United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 267 n.1 (5th Cir. 2010) (citing *United States ex rel. Kirk v. Schindler Elevator Corp.*, 601 F.3d 94, 113 (2d Cir. 2010), *cert. granted*, 79 U.S.L.W. 3092 (U.S. Sept. 28, 2010)). As the original Complaint here was pending as of June 7, 2008, FERA applies, and the Court will thus assess Wall's false record theory under the current version of § 3729(a)(1)(B), which the Court will refer to as the "false record theory" or "§ 3729(a)(1)(B)."

(5) retaliated against Relator for complaining about some of these practices, by demoting and eventually terminating her.  The Court exercises supplemental jurisdiction over the state law causes of action pursuant to 28 U.S.C. § 1367.

## II.     Procedural Background

Wall filed her original Complaint on April 6, 2007, and an Amended Complaint on September 29, 2009.  The United States and the States of Indiana, Massachusetts, Nevada, New Mexico, and Texas all declined to intervene in the action, and the Court ordered the case unsealed on October 5, 2009.  Defendants now move to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

## III.     Hospice Coverage under Medicare and Medicaid

Medicare and Medicaid are federal and state programs that provide health coverage benefits for elderly and disabled individuals, among others.[5]  The Medicare Hospice Benefit ("MHB") pays a predetermined fee for each day an eligible patient receives hospice care.  To be eligible, the individual's attending physician and the hospice program's medical director must certify that the patient is terminally ill "based on the physician's or medical director's clinical judgment regarding the normal course of the individual's illness."[6]  An illness is deemed terminal when "the individual has a medical prognosis that his or her life expectancy is 6 months or less if the illness runs its normal course."[7]  After the initial certification for a patient, MHB provides two 90-day benefit periods followed by an unlimited number of 60-day benefit periods.[8]  At the end of each period, the patient can be recertified for hospice care only if, at that time, it is determined by the medical director or physician that he or she has less than 6 months to live if

---

[5] *See* 42 U.S.C. §§ 1395 *et seq.*
[6] 42 U.S.C. § 1395f(a)(7).
[7] 42 C.F.R. § 418.3.
[8] 42 U.S.C. § 1395d(a)(4).

the illness runs its normal course.[9]  There is no limit on the number of times a patient can be recertified.  During the first 90-days, a hospice provider must obtain a written or oral certification of the terminal condition from (1) the medical director or a physician in the hospice interdisciplinary group ("IDG"), [10] and (2) the individual's attending physician, before it submits a claim for payment under Medicare.[11]  For subsequent periods, written or oral certification of the terminal condition may be from the medical director or a physician in the hospice IDG.[12]

Medicare reimburses hospice providers at one of four predetermined rates for each day an eligible beneficiary is under the hospice provider's care.  That per-diem payment is limited by two caps: the first limits the total amount a hospice provider can receive annually from Medicare for a particular patient, and the second limits the total amount a hospice provider can receive annually for all of its Medicare patients.[13]  In order to be eligible for reimbursement, a hospice provider must meet certain "requirements for coverage."[14]  Among these requirements is the establishment of (1) an IDG to provide or supervise the provision of care and services to hospice patients and (2) a "written plan of care" for each patient.[15]

Medicaid, by contrast to Medicare, is a cooperative federal-state program, through which the federal government provides financial assistance to assist states in furnishing medical care to the poor.[16]  Although voluntary, the Medicaid program requires participating state governments to comply with certain federal statutory and regulatory controls, in exchange for fifty percent

---

[9] *Id.* § 1395f(a)(7).

[10] The IDG must include at least one physician, one registered professional nurse, one social worker employed by the agency or organization, and at least one pastoral or other counselor.  42 C.F.R. § 418.56.

[11] 42 C.F.R. § 418.22(c).

[12] *Id.*

[13] 42 U.S.C. § 1395f(i).

[14] 42 C.F.R. § 418.200.

[15] 42 C.F.R. § 418.56.  Hospice care must follow an individualized written plan of care.  The plan must reflect patient and family goals, and include all services necessary for the palliation and management of the terminal illness and related conditions.  *Id.*

[16] 42 U.S.C. §§ 1396 *et seq.  See Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 502 (1990).

federal financing.  To qualify for federal funding, participating states must develop a plan for medical assistance to the poor, develop cost-based payment rates to reimburse medical providers for services rendered to eligible recipients, and designate a single agency to evaluate cost reports submitted by private vendors of health services and reimburse vendors for allowed expenses.[17]

## LEGAL STANDARD

A pleading under Federal Rule of Civil Procedure 8 must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8 does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support.[18]  While a court must accept all of the plaintiff's allegations as true, it is not bound to accept as true "a legal conclusion couched as a factual allegation."[19]  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.[20]  Where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint stops short of showing that the pleader is plausibly entitled to relief.[21]  In deciding a motion to dismiss, the court may consider documents attached to or incorporated into the complaint, and may take judicial notice of appropriate matters.[22]

FCA allegations must also satisfy Rule 9(b), which requires that a party "alleging fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake."[23] The Fifth Circuit has interpreted Rule 9(b) to require, at a minimum, that a plaintiff set forth the

---

[17] *See* 42 U.S.C. § 1396a(a); 42 C.F.R. § 431.10(b)(1).
[18] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citations omitted).
[19] *Id.* at 1949–50 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[20] *Twombly*, 550 U.S. at 570.
[21] Fed. Rule Civ. P. 8(a)(2); *Iqbal*, 129 S. Ct. at 1950.
[22] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); s*ee also* Fed. R. Evid. 201(f) ("Judicial notice may be taken at any stage of the proceeding.").
[23] *See, e.g.*, *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009); *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 384 (5th Cir. 2003); *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997).

"who, what, when, where, and how" of the alleged fraud.[24]  However, the Fifth Circuit has also stated that the "time, place, contents, and identity standard is not a straitjacket for Rule 9(b),"[25] concluding that Rule 9(b) is context-specific and flexible.[26]  The Fifth Circuit recently noted that the standard for stating a claim for relief with particularity is lower in the FCA context than it is in the securities or common law fraud contexts.[27]

ANALYSIS

## I.       Federal FCA Allegations (Counts One through Four)

VistaCare argues for dismissal, as not satisfying Rule 9(b)'s pleading requirements, of Wall's FCA allegations for (1) improper enrollment of patients into hospice care (Count One); (2) failure to provide required services (Count Two); (3) provision of medically unnecessary durable medical equipment (Count Three); and (4) illegal kickbacks (Count Four).  In the alternative, VistaCare urges that Wall fails to state viable FCA allegations, which are the only basis for federal jurisdiction.

### A.  Count One (Improper Enrollment)

Wall alleges VistaCare improperly enrolled patients into hospice and billed the government for hospice services to be paid by Medicare and Medicaid, in violation of the FCA's presentment and false record provisions.[28]

#### 1.  Rule 9(b)—Particularity of the Circumstances Constituting Fraud

The FCA's presentment provision makes liable any person who "knowingly presents, or causes to be presented" a false claim to the government.[29]  This provision requires an express

---

[24] *Thompson*, 125 F.3d at 903 (quoting *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997)).
[25] *Grubbs*, 565 F.3d at 190 (internal quotation marks omitted).
[26] *See id.* at 188, 190.
[27] *See id.* at 188–89.
[28] The analyses for presentment and false record theories are the same.
[29] 31 U.S.C. § 3729(a)(1) (2008).  *See supra* note 3 and accompanying text.

presentment.  A relator asserting such a cause of action may satisfy Rule 9(b) by "alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted."[30]

By contrast, the false record provision imposes civil liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."[31]  That provision does not require an express presentment of the false or fraudulent statement.[32]

VistaCare contends Wall does not show the "who, what, when, where, and how" of the alleged fraud for her presentment and false record theories of improper enrollment of hospice patients.  Wall specifically alleges that ineligible patients, identified by their initials, were admitted into hospice care, on specific dates ("when").  She does not allege clearly whether the patients were all admitted in Denton, Texas or elsewhere ("where").

Wall describes multiple ways in which the alleged fraud was perpetrated ("how"): that "VistaCare" tried to persuade non-physicians to improperly certify patients for hospice care; that "VistaCare" forged signatures of physicians; that VistaCare "shopped around" for doctors who were willing to certify patients not qualified for hospice care, and pressured them to do so; and that "VistaCare" kept changing diagnoses, encouraged physicians to provide vague diagnoses, and admitted shorter-term patients to keep its overall average hospice stays just below the maximum caps for Medicare reimbursement.

However, Wall does not identify any individuals who participated in the alleged fraud; state that persons purposefully acting for VistaCare acted with the requisite intent in making false statements or preparing false records to obtain reimbursement from the government; or

---

[30] *Grubbs*, 565 F.3d at 190.
[31] 31 U.S.C. § 3729(a)(1)(B) (2009).  *See supra* note 4 and accompanying text.
[32] *Grubbs*, 565 F.3d at 193.

identify whether the hospice patients identified, in fact have Medicare or Medicaid ("who" and "what"). For example, Wall alleges that "VistaCare told its employees to certify patients for hospice care who were not terminally ill" and "[o]n several occasions, VistaCare got a non-physician to forge a doctor's signature on a certification."[33]

The Court notes that for a number of allegedly improper certifications, Plaintiff provides patient initials, dates, and medical information about patients, which seemingly would provide VistaCare with the tools needed to determine who certified those patients for hospice care.[34] As to other affected hospice patients, Wall provides comparative length-of-stay data,[35] rather than a claim by claim analysis as to each patient and each hospice claim by VistaCare. Wall also alleges, "upon information and belief," that 93% of VistaCare's patients are enrolled in Medicare, and approximately 4% are enrolled in Medicaid,[36] attempting thereby to establish that the patients allegedly certified falsely were Medicare or Medicaid patients. If combined with a sufficient number of specific, verifiable cases, an analysis extrapolating to other patients is not fatal to Wall's Complaint, but rather tends to strengthen the inference of fraud.[37]

However, Defendants are entitled to a pleading which specifies the manner in which "VistaCare" allegedly instructed its employees to falsify certifications for specific individual patients, that those employees did so with the requisite intent, that named individuals acting for

---

[33] First Am. Compl. ¶ 14.

[34] *Grubbs*, 565 F.3d at 191 ("In many cases, the defendants will be in possession of the most relevant records, such as patients' charts, doctors' notes, and internal billing records, with which to defend on the grounds that alleged falsely-recorded services were not recorded, were not billed for, or were actually provided.").

[35] Wall alleges that on average VistaCare patients had longer lengths of stay than the industry standard because ineligible patients were enrolled with accompanying false certifications and false claims for reimbursement to Medicare or Medicaid. First Am. Compl. ¶¶ 39–42.

[36] First Am. Compl. ¶ 1. Information and belief pleading is generally not sufficient under Rule 9(b). *Thompson*, 125 F.3d at 903.

[37] *Duxbury*, 579 F.3d at 29 (in a *qui tam* action in which a defendant induced third parties, such as doctors or employees, to file false claims with the government, a relator may satisfy Rule 9(b) by providing "factual or statistical evidence to strengthen the inference of fraud," without necessarily providing details as to each false claim) (quoting *United States ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 733 (1st Cir. 2007) and citing *Grubbs*, 565 F.3d at 190).

VistaCare asked other named individuals to forge doctors' names for specific individuals, and that they did so. Otherwise, Defendants would not be able to defend against Wall's generalized complaints. Further, except as to the Medicare and Medicaid enrollment percentages, the allegations stated upon information and belief are insufficient, and Wall must provide a factual basis for her beliefs.[38]

### 2. Viable FCA Allegation

For a sustainable presentment or false record theory under the FCA, the Fifth Circuit requires (1) a false or fraudulent claim or statement; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay or forfeit money.[39] At issue here is whether Defendants made a false or fraudulent claim or statement.

Courts have recognized that legally or factually false claims for payment trigger potential liability under the FCA.[40] In a case alleging a theory of legal falsity, the relator must demonstrate that the defendant has certified compliance with a statute or regulation as a condition to government payment.[41] By contrast, in a case complaining of factual falsity, a relator must generally show that the prospective payee has submitted an inaccurate description of

---

[38] *Thompson*, 125 F.3d at 903 (citations omitted).

[39] *United States ex rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 467 (5th Cir. 2009) (applying elements to both presentment and false record theories). *See also Steury*, 625 F.3d at 267 (stating elements, except stating the fourth element to be: "that is presented to the Government"). The Court notes that the fourth element under the *Longhi* test may no longer be applicable. In *Grubbs*, the court stated, "the recording of a false record, when it is made with the requisite intent, is enough to satisfy the statute; we need not make the step of inferring that the record actually *caused* a claim to be presented to the Government." 565 F.3d at 193 (emphasis added). FERA expressly amended the FCA to overrule the Supreme Court's decision in *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662 (2008), which held that a false record or statement implicated the FCA only when it was made with the specific "purpose of getting a false or fraudulent claim" paid by "the Government itself." *Id.* at 668–69. Further, under FERA, the FCA false record provision no longer has the language "to get a false or fraudulent claim paid or approved by the Government." Instead, the false record provision prohibits the knowing use of a "false record or statement *material to a false or fraudulent claim*." 31 U.S.C. § 3729(a)(1)(B) (2009). Even under *Grubbs*, which is pre-FERA, the court held that the "the [FCA] is remedial and exposes even unsuccessful claims to liability. A person that presented fraudulent claims that were never paid remains liable for the Act's civil penalty." 565 F.3d at 189. Fifth Circuit precedent consistently applies the first three elements, and only the first is at issue here.

[40] *United States ex rel. Bennett v. Medtronic, Inc.*, --- F. Supp. 2d ---, 2010 WL 3909447, at *14 (S.D. Tex. Sept. 30, 2010) (citing *United States ex rel. Graves v. ITT Educ. Servs., Inc.*, 284 F. Supp. 2d 487, 497 (S.D. Tex. 2003), aff'd 111 Fed. App'x 296 (5th Cir. Oct. 20, 2004)).

[41] *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 902 (5th Cir. 1997).

goods or services provided, or a request for reimbursement for goods or services never provided.[42]

A claim is not necessarily "legally false" simply because it involves a violation of a statute or regulation; what makes a claim legally false is that it involves a knowingly false certification of compliance with a statute or regulation, when that certification is a prerequisite to payment of the asserted claim.[43] At issue here is whether VistaCare certified patients for hospice eligibility in violation of the applicable law.

The federal government conditions reimbursement to providers of hospice services on certification of hospice eligibility.[44] A patient is initially eligible for hospice care if (1) the hospice center's medical director or physician member of the IDG and (2) the individual's attending physician (if any) certify that the individual is terminally ill based on the physician or medical director's clinical judgment regarding the normal course of the individual's terminal illness.[45] As VistaCare states, a physician must use his clinical judgment to determine hospice eligibility, and an FCA complaint about the exercise of that judgment must be predicated on the presence of an objectively verifiable fact at odds with the exercise of that judgment, not a matter of subjective clinical analysis.[46] According to Wall, VistaCare certified patients to be hospice eligible, without obtaining the medical director or physician's approval, or by forging a medical director or physician's signature on a certification.[47] VistaCare's allegedly false statement in this

---

[42] *Mikes v. Straus*, 274 F.3d 687, 697 (2d Cir. 2001). *See also United States ex rel. Jamison v. McKesson Corp.*, No. 2:08-cv-214-SA-DAS, 2009 WL 3176168, at *11 (N.D. Miss. Sept. 29, 2009); *Bennett*, 2010 WL 3909448, at *14.

[43] *See Thompson*, 125 F.3d at 902 ("[W]here the government has conditioned payment of a claim upon a claimant's certification of compliance with, for example, a statute or regulation, a claimant submits a false or fraudulent claim when he or she falsely certifies compliance with that statute or regulation.").

[44] 42 U.S.C. § 1395f.

[45] *Id.* § 1395f(a)(7); 42 C.F.R. § 418.22(c).

[46] *United States ex rel. Morton v. A Plus Benefits, Inc.*, 139 Fed. App'x 980, 982–83 (10th Cir. 2005) ("At a minimum the FCA requires proof of an objective falsehood."). *See also Branch Consultants*, 668 F. Supp.2d at 808 (citing *Morton*).

[47] First Am. Compl. ¶¶ 14 & 15.

regard is not merely certifying those who are not terminally ill, but from doing so without a *physician or medical director* certifying those patients for hospice eligibility. Therefore, Wall has sufficiently pleaded a legally false certification theory for improper enrollment.

For a theory of factual falsity, a relator must show that the prospective payee has submitted an accurate description of goods or services provided, or a request for reimbursement for goods or services never provided.[48] Wall's factual falsity theory is based on the submission of requests for payment for services the provider knows are not covered. Wall conflates the legally and factually false theories—VistaCare allegedly submitted inaccurate claims for hospice services because the hospice patients were ineligible for hospice, based on the hospice eligibility statute. Wall does not, however, state that VistaCare submitted an incorrect description of the hospice services provided nor that VistaCare requested reimbursement for goods or services never provided.[49] Therefore, Wall has not sufficiently pled a theory of factual falsity for improper enrollment under Count One.

Wall has sufficiently pleaded false certification, but has not met the Rule 9(b) standards for presentment and false record theories for improper enrollment under the FCA. Therefore, VistaCare's motion to dismiss as to Count One is **GRANTED**, but Wall may replead Count One to satisfy the "who," "where," and "what" requirements of Rule 9(b), and to set forth her personal knowledge and/or the basis of her factual assertions based on "information and belief."[50]

---

[48] *Mikes v. Straus*, 274 F.3d 687, 697 (2d Cir. 2001). *See also Jamison*, 2009 WL 3176168, at *11 (citing *Mikes*); *Bennett*, 2010 WL 3909447, at *14 (citing *Mikes*).
[49] Wall does allege such facts in her "failure to provide services" action in Count Two. *See infra* Part I.B.
[50] Wall need not replead the Medicare and Medicaid enrollment percentages, which are also based upon information belief. The Court has already found that pleading sufficient.

## B. Count Two (Failure to Provide Services)

Wall alleges VistaCare accepted and retained payments from the government for services not actually provided to hospice patients.[51]

### 1. Rule 9(b)—Particularity of the Circumstances Constituting Fraud

VistaCare challenges the sufficiency of the "who, what, when, where, and how" pleading of Wall's FCA action for failure to provide services. Wall alleges that multiple patients, identified by their initials, were denied certain services, apparently in Denton, Texas ("where"), on specific dates ("when"), and that VistaCare falsely or fraudulently certified compliance with statutes and regulations requiring these services, and submitted false and fraudulent claims to the government for payment. She states that VistaCare failed to provide physical therapy, occupational therapy, and speech-language pathology services, telling patients that the therapies were inappropriate for them, and not even employing therapists to provide such services;[52] that VistaCare failed to provide dietary counseling;[53] that VistaCare did not provide a written plan of care for each person admitted;[54] that IDG meetings did not occur as frequently as required;[55] and that the requisite hours of nursing care during crisis periods were not provided.[56]

VistaCare contends that Wall does not identify the specific individuals who participated in the alleged fraud ("who") nor state the specific false statements or records used to obtain reimbursement ("what"). For Count Two, the Court finds the pleading detail sufficient. Wall

---

[51] In its motion to dismiss, VistaCare does not discuss whether this count should be analyzed as a presentment or false record theory under 31 U.S.C. § 3729. In her response, Wall, likewise, does not distinguish the two types of actions. As is the case regarding improper enrollment, the analysis is similar for both theories, and, therefore, the Court similarly evaluates the sufficiency of the failure to provide services action, without bifurcating its analysis for presentment and false record.

[52] 42 C.F.R. § 418.72 (2010). In her Amended Complaint, Wall cites to other inapplicable subsections of the Code of Federal Regulations.

[53] 42 C.F.R. § 418.64 (2010).

[54] *Id.* §§ 418.56 & 418.202.

[55] *Id.*

[56] *Id.* § 418.204.

contends that services required during hospice care were not in fact furnished to patients in VistaCare's hospice program, and the details provided enable VistaCare to defend against Wall's FCA action for failure to provide services.

### 2. Materiality and Viability of Wall's FCA Allegation For Failure to Provide Services

VistaCare argues that Wall cannot sufficiently plead the "materiality" element of Wall's FCA allegation for failure to provide services. To establish liability for such an action, Wall must show, among other things, that VistaCare's certification of compliance was "material" to the government's decision to pay VistaCare.[57]

When a contractor participates in a government program to provide services for which payments by the government will be made, courts distinguish between "conditions of participation" and "conditions of payment."[58] A sustainable FCA allegation premised on a false certification of compliance with statutory or regulatory requirements must be based upon a "condition of payment," not a "condition of participation."[59] If the government knew a condition of payment was not being satisfied, it could, and presumably would, refuse payment.[60] By contrast, a condition of participation is enforced through administrative mechanisms and, if violated, results in a person or entity's removal from the government program.[61]

---

[57] *United States ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1219 (10th Cir. 2008).

[58] *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 382–83 (5th Cir. 2003); *Mikes v. Straus*, 274 F.3d 687, 701–02 (2d Cir. 2001); *Conner*, 543 F.3d at 1221.

[59] *Thompson*, 125 F.3d at 902 ("Thus, where the government has conditioned payment of a claim upon a claimant's certification of compliance with, for example, a statute or regulation, a claimant submits a false or fraudulent claim when he or she falsely certifies compliance with the statute or regulation."). *See also Willard*, 336 F.3d at 382 (affirming dismissal of plaintiff's Medicare FCA case, concluding that "compliance with the regulations Willard alleges Humana violated was not a condition of payment under the contract"); *Sweeney v. ManorCare Health Servs., Inc.*, No. C03-5320RJB, 2005 WL 4030950, at *5 (W.D. Wash. Mar. 4, 2005) (dismissing the plaintiff's Medicare FCA allegation, "where full regulatory compliance is not a requirement for receipt of federal funding. [Plaintiff] does not allege that the regulatory violations were conditions of payment. The regulation violations [plaintiff] points to are conditions of participation in the Medicare and Medicaid programs. Moreover, there are administrative and other remedies for regulatory violations.") (citations and internal quotations omitted).

[60] *Conner*, 543 F.3d at 1220.

[61] *Id.*

Thus, the question before the Court is whether VistaCare's certification that it provided services required under Medicare regulations and statutes for hospice care was a condition of payment or merely a condition of participation. Here, Wall alleges VistaCare did not provide designated services under 42 C.F.R § 418.[62] VistaCare provided to the Court the Medicare Program Integrity Manual of the Centers for Medicare and Medicaid Services' ("CMS"), which states: "If during a review it is determined that a provider does not comply with conditions of participation, do not deny payment solely for this reason."[63] In response, Wall provided the CMS-855A form, which is to be submitted by all hospice care providers in order to enroll in the Medicare program, and which states: "I understand that payment of a claim by Medicare is conditioned . . . on the provider's compliance with all applicable conditions of participation in Medicare."[64] Wall argues that by signing the CMS-855A form, hospice providers acknowledge that payment is conditioned on compliance with the applicable conditions of participation. However, if merely signing this form converts a condition of participation into a condition of payment, then *every* hospice provider not fully complying with all conditions of participation may be held liable under the FCA, thus undermining the distinction between conditions of payment and participation, as well as Medicare's internal administrative structure to deal with violations of conditions of participation. To so hold would burden federal courts with what should be administrative determinations of whether medical services were performed in compliance with Medicare statutes and regulations governing participation.[65] Courts are not the

---

[62] *See supra* notes 52–56 and accompanying text.

[63] Because publications by government agencies are proper subjects for judicial notice, the Court takes judicial notice of the CMS Medicare Program Integrity Manual. *See R2 Invs. LDC v. Phillips*, 401 F.3d 638, 639 n.2 (5th Cir. 2005). Def.'s Mot. to Dismiss, App. Ex. 3 at 9.

[64] The Court takes judicial notice of the CMS form. *See supra* note 63. Relator's Resp. to Def.'s Mot. to Dismiss, App. Ex. 4.

[65] *Conner*, 543 F.3d at 1221.

place where such issues are to first be resolved.[66]  Therefore, although the CMS-855A form purports to condition payment on compliance with "all applicable conditions of participation,"[67] this Court does not read that form as mandating an extension of FCA liability to every statement certifying compliance with any Medicare statute or regulation relating to conditions of participation.

However, the Court does not foreclose the possibility that falsely certifying that certain services were performed may violate a condition of payment under Medicare.  Although Wall has satisfied Rule 9(b)'s requirements in Count Two, she has not sufficiently stated an FCA allegation for failure to provide services under Rule 12(b) because VistaCare's certification of compliance with all "conditions of participation" is not material to the government's decision to reimburse VistaCare for its hospice services.  Therefore, VistaCare's motion to dismiss as to Count Two is **GRANTED**.  Wall may replead Count Two to satisfy the materiality requirement of an FCA allegation by pleading what specific services are conditions of payment that were not met.

### C.  Count Three (Unnecessary Medical Equipment)

Wall concedes that she does not state an FCA allegation based on VistaCare purportedly making false Medicare claims for unnecessary medical equipment, because VistaCare is paid a per-diem amount regardless of the amount of medical equipment ordered by it.[68]  Count Three is therefore **DISMISSED** with prejudice.

---

[66] *Id.* (citing *Mikes*, 274 F.3d at 700).
[67] *Willard*, 336 F.3d at 383 (finding that conditions of participation were not conditions of payment, in part, because the Medicare contract submitted by defendant did not mention the relevant statutes and regulations requiring the conditions of participation, "let alone their compliance certified as a condition for payment.").
[68] Relator's Resp. to Def.'s Mot. to Dismiss 34.

### D. Count Four (Violation of Federal Anti-Kickback Statute)

Wall alleges that VistaCare pursued various schemes to pay patients and their families kickbacks, or to offer extra services, to encourage them to enroll in hospice care, or not to revoke prior enrollments, and that VistaCare paid kickbacks to unidentified nursing home employees for patient referrals. Wall argues that the payments of these kickbacks ultimately caused the government to provide reimbursement for the care of these patients, in violation of 31 U.S.C. § 3729. In support of this allegation, Wall provides a general description of the alleged kickback scheme and a specific example of a patient, identified by initials, who received money from VistaCare Foundation to refer others, including another specified patient, also identified by initials, who became a patient of VistaCare.

The Medicare anti-kickback statute prohibits the offer or payment of any remuneration to any person to induce such person to refer Medicare patients.[69] The anti-kickback statute's definition of "person" includes "an individual, a trust or estate, a partnership, or a corporation,"[70] and its subsections do not distinguish between referrals from or to physicians or lay persons.[71] Further, while violations of laws, rules, or regulations alone do not create a cause of action under the FCA, false certifications of legal compliance can create liability.[72] The Fifth Circuit has held that an alleged violation of the anti-kickback statute can form the basis of an FCA allegation when the government has conditioned payment upon a claimant's certification of compliance with a statute, such as the anti-kickback statute.[73]

---

[69] 42 U.S.C. § 1320a-7b(b).

[70] 42 U.S.C. § 1301(a)(3).

[71] *See U.S. v. Polin*, 194 F.3d 863, 866–67 (7th Cir. 1999) ("The different subsections [of the anti-kickback statute] do not distinguish between physicians and lay-persons.").

[72] *Thompson*, 125 F.3d at 902 (relator "fairly alleged that the government's payment of Medicare claims is conditioned upon certification of compliance with the laws and regulations regarding the provision of healthcare services, including the anti-kickback statute").

[73] *Id. Accord United States ex rel. Pogue v. Am. Healthcorp., Inc.*, 914 F. Supp. 1507, 1513 (M.D. Tenn. 1996); *United States ex rel. Roy v. Anthony*, 914 F. Supp. 1504, 1506 (S.D. Ohio 1994).

VistaCare argues for dismissal of Count Four because Wall has not sufficiently stated that VistaCare certified compliance with the anti-kickback statute. The Court disagrees. Wall asserts that VistaCare, through its foundation,[74] paid or offered to pay a patient money, in order to induce or reward the patient for referring other patients to become a Medicare patient of VistaCare; that VistaCare submitted false or fraudulent claims for Medicare reimbursement; and that the government would not have paid the claims submitted by VistaCare, had it known of the alleged kickbacks VistaCare allegedly concealed. The CMS-855A form, which VistaCare must sign in order to be enrolled for Medicare reimbursement for hospice services, has the hospice provider certify that "I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions (including, but not limited to, the *Federal anti-kickback statute* and the Stark law)."[75] Taking into consideration the alleged facts on the face of Wall's pleading and the CMS-855A form, it is reasonable to infer that VistaCare certified compliance with the anti-kickback statute. Wall sufficiently states a violation of the anti-kickback statute and that VistaCare certified compliance with that statute when submitting claims for Medicare reimbursement.[76] Therefore, VistaCare's motion to dismiss Count Four is **DENIED**.

---

[74] Pleading that the payment came from VistaCare Foundation is not fatal to Wall's Complaint, because the anti-kickback statute penalizes paying remuneration "indirectly." 42 U.S.C. § 1320a-7b(b)(2)(B). Wall sufficiently states that VistaCare indirectly, through VistaCare Foundation, paid remuneration to patients for referrals.

[75] Relator's Resp. to Def.'s Mot. to Dismiss, App. Ex. 4, at 37 (emphasis added).

[76] Under Count Two, the Court held that the CMS-855A form did not extend FCA liability to every statement certifying compliance with any Medicare statute or regulation relating to conditions of participation, and thus certifying compliance with all conditions of participation was not material to the government's decision to reimburse VistaCare for its hospice services. Here, however, the Court takes judicial notice of the CMS-855A form to the extent that hospice providers must certify its knowledge that Medicare conditions payment on complying with the anti-kickback statute before one is eligible for Medicare reimbursement. Such certification, according to the Fifth Circuit in *Thompson*, may form the basis of an FCA cause of action because the government has conditioned Medicare reimbursement upon VistaCare's certification of compliance with the anti-kickback statute. *See* 125 F.3d at 902.

## II.    State FCA Allegations (Counts Six through Ten)

Wall does not sufficiently support her allegations that VistaCare violated the false claims laws of the five states on whose behalf she purports to sue.  Wall states she was employed at VistaCare's Denton, Texas office, on occasion worked at three other Texas offices, did "telephone mentoring" with social workers in two Oklahoma offices, and "had contact with VistaCare headquarters" in Arizona.[77]  The specific facts Wall has alleged relate solely to her work in Denton, Texas, and cannot support by inference her general pleading, "upon information and belief," that similar frauds were also perpetrated in Indiana, Massachusetts, Nevada, and New Mexico, in alleged violation of those states' laws against false claims.[78]  Wall provides no details of the alleged fraud in those other states, but to plead properly, even where the allegations are stated on information and belief, a plaintiff must set forth in the complaint the facts supporting the belief.[79]  Because Wall has not alleged any facts showing fraud by VistaCare in any state other than Texas or any basis for such knowledge as would support such allegations, Wall's causes of action under the false claims laws of Massachusetts, Nevada, and New Mexico are **DISMISSED** without prejudice.

As to Wall's allegation under the false claim laws of Indiana, VistaCare's alleged conduct occurred prior to the May 11, 2005 enactment of the Indiana FCA, and, under Indiana case law, statutes are to be given prospective effect only, unless the Indiana legislature unequivocally and unambiguously intended retrospective effect as well.[80]  Nothing in the Indiana FCA or its legislative history unequivocally and unambiguously expresses retrospective

---

[77] First Am. Compl. ¶ 2.
[78] First Am. Compl. ¶¶ 92, 105, 118, 131; *accord United States ex rel. Harris v. Alan Ritchey, Inc.*, No. C00-2191Z, 2006 WL 3761339, at *6 (W.D. Wash. Dec. 20, 2006) (dismissing allegations under Rule 9(b) relating to defendant's locations other than Auburn, Washington because "allegations related to one location do not meet the pleading requirements of Rule 9(b) for other locations").
[79] *Thompson*, 125 F.3d at 903 (citations omitted).
[80] *State v. Pelley*, 828 N.E.2d 915, 919 (Ind. 2005).

application,[81] and, therefore, Wall's cause of action under the Indiana FCA is **DISMISSED** with prejudice.

Wall's allegations of fraud under the Texas Medicaid Fraud Prevention Act ("TMFPA"), Tex. Hum. Res. Code §§ 36.001 *et seq.*, must also be dismissed, because the State of Texas has elected not to intervene. Before May 4, 2007, the TMFPA provided that "[i]f the state declines to take over the action, the court shall dismiss the action,"[82] presumably without prejudice. The TMFPA was later amended to allow actions to proceed when the state declines to intervene, but this "applies only to conduct that occurs on or after" May 4, 2007.[83] Because all of the conduct that Wall complains of occurred before this date, Count Ten is **DISMISSED** without prejudice.[84]

### III.    Retaliation Under the FCA and TMFPA (Counts Five and Eleven)

Wall contends that the termination of her employment violated the retaliation provisions of the FCA and the TMFPA,[85] both of which prohibit an employer from retaliating against an employee for lawful acts in furtherance of efforts to stop a violation of the FCA and TMFPA.[86] The Court does not determine whether Wall sufficiently states a cause of action under either statute because the retaliation actions are time barred.

---

[81] *See* Ind. Code §§ 5-11-5.5-1 *et seq.*

[82] Tex. Hum. Res. Code Ann. § 36.104(b) (Vernon 1997) (amended 2007) (current version at Tex. Hum. Res. Code Ann. § 36.104 (Vernon 2009)).

[83] Acts of May 4, 2007, 80th Leg. R.S., ch. 29, § 6(a), 2007 Tex. Gen. Laws 28 (amended 2007) (current version at Tex. Hum. Res. Code Ann. § 36.104 (Vernon Supp. 2009)).

[84] *See United States ex rel. Fitzgerald v. Novation, L.L.C.*, No. 3:03-CV-1589-N (N.D. Tex. Sept. 17, 2008) (Godbey, J.) (copied in Def.'s App. Ex. 7) (dismissing an allegation brought under TMFPA because the State of Texas did not intervene and the TMFPA amendment did not apply, because the conduct alleged occurred before May 4, 2007). In *Fitzgerald*, Judge Godbey interpreted "conduct" to be the actions of the defendant that are the subject of the relator's complaint, not the decision of the state not to intervene, as Wall urges. This Court agrees with Judge Godbey's analysis.

[85] The TMFPA does not state whether non-intervention by the State also results in dismissal of a retaliation suit. The Court found no case law providing any guidance on this issue. In the absence of case law or statutory guidance, the Court proceeds to analyze the limitations issue on the TMFPA retaliation allegation, concluding non-intervention does not bar the individual retaliation action.

[86] 31 U.S.C. § 3730(h) (2006); Tex. Hum. Res. Code § 36.115.

Neither the FCA nor the TMFPA provides a statute of limitations applicable to employment retaliation actions. The statute of limitations for these actions is therefore borrowed from the most closely analogous state limitations period.[87] In rejecting the applicability of the FCA's general limitations provision to retaliation actions in *Graham County Soil & Water Conservation District v. United States ex rel. Wilson*, the United States Supreme Court catalogued limitations statutes in every state potentially applicable to FCA retaliation actions. For Texas, the Supreme Court identified the two-year limitations period for personal injury actions and the 90-day limitations period for retaliation actions brought by state and local government employees under the Texas Whistleblower Act.[88] There is no definitive Fifth Circuit decision on this issue. This Court adopts the reasoning of *United States ex rel. Smart v. Christus Health*, which held that for a retaliation action under the FCA brought by a plaintiff in the healthcare industry, the 180-day limitations period for a hospital whistleblower's retaliation action under the Texas Whistleblower Act is clearly more analogous than is the two-year limitations period for personal injury actions in Texas.[89] Here, as in *Smart*, Wall alleges retaliation for whistle blowing in the healthcare industry, and the Court thus applies the State's 180-day limitations period for retaliation against hospital employees for reporting violations of law.

If the Court were to apply the 90-day limitations period identified by the Supreme Court in *Wilson*, the outcome would obviously be the same. The final act of retaliation allegedly committed by VistaCare was its termination of Wall on April 8, 2005. She did not file her Complaint until April 6, 2007, almost two years later. Only application of the two-year

---

[87] *See Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 419 (2005) ("[W]e borrow the most closely analogous state time limit absent an expressly applicable one.").

[88] *Id.* at 419 n.3 (listing Tex. Civ. Prac. & Rem. Code Ann. § 16.003 (West 2002) and Tex. Govt. Code Ann. § 554.004 (West 2004)).

[89] *See* 626 F. Supp. 2d 647, 657–58 (S.D. Tex. 2009).

limitations period for personal injury suits could save her retaliation actions.  Since this Court

rejects application of that provision, it finds her retaliation actions time barred and **DISMISSES**

them with prejudice.

### IV.    Wrongful Discharge (Count Twelve)

Finally, Wall brings a cause of action for wrongful discharge under Texas law, alleging

that she was demoted, and then discharged, because she "refused to comply with VistaCare's

illegal and fraudulent scheme" of enrolling ineligible patients in hospice care.[90]

*Sabine Pilot Service, Inc. v. Hauck* carved out a narrow exception to the Texas

employment-at-will doctrine, that an employee cannot be terminated solely for her refusal to

carry out an illegal act.[91]   However, Wall contends she was wrongfully terminated both for

"reporting violations [of] federal regulations and fraudulent behavior to her superiors," and for

refusing to participate in illegal activity.[92]   A *Sabine Pilot* allegation cannot be pled in the

alternative.[93]   Count Twelve is therefore **DISMISSED**, but Wall may replead, if she can do so in

good faith, alleging specifically what illegal act she allegedly refused to commit and that it was

the sole cause of her termination.

<u>CONCLUSION</u>

For the reasons stated above, Defendants' Motion to Dismiss is **GRANTED** with

prejudice as to Counts Three, Five, Six, and Eleven; **GRANTED** without prejudice as to Counts

One, Two, Seven, Eight, Nine, Ten, and Twelve; and **DENIED** as to Count Four.  Relator may

amend her Complaint in accordance with this Opinion on or before twenty-eight days from the

---

[90] *See* First Am. Compl. ¶ 162.
[91] 687 S.W.2d 733, 735 (Tex. 1985).
[92] First Am. Compl. ¶ 90.
[93] *See Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 952–53 (5th Cir. 1994) (holding that a relator's assertion that he was fired in retaliation for investigating a *qui tam* action precluded his common law wrongful discharge cause of action for refusing to perform a criminal act); *Denson v. Meadwestvaco Corp.*, No. 3:04-CV-337-M, 2005 WL 2179116, at *7 (N.D. Tex. Sept. 8, 2005) (Lynn, J.).

date of this Opinion.

**SO ORDERED.**

March 9, 2011.

_Barbara M. G. Lynn_
**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**