IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>    ex rel. MISTY WALL, | § | |
| | § | |
| | § | |
| Relator, | § | |
| | § | |
| vs. | § | Civil Action No. 3-07-CV-0604-M |
| | § | |
| VISTA HOSPICE CARE, INC. d/b/a | § | |
| VISTACARE; VISTACARE, INC., | § | |
| ODYSSEY HEALTHCARE, INC., only in | § | |
| its capacity as successor-in-interest to | § | |
| VISTA HOSPICE CARE, INC. and | § | |
| VISTACARE, INC. and GENTIVA | § | |
| HEALTH SERVICES, only in its capacity | § | |
| as successor-in-interest to ODYSSEY | § | |
| HEALTHCARE, INC. | § | |
| | § | |
| Defendants. | § | |

**<u>DEFENDANTS' MOTION TO DISMISS AND
MEMORANDUM OF LAW IN SUPPORT THEREOF</u>**

**LACKEY HERSHMAN, LLP**

Robert M. Castle, III
State Bar No. 24036338
Jamie R. Welton
State Bar No. 24013732
William C. McMurrey
State Bar No. 13811100

3102 Oak Lawn Avenue, Suite 777
Dallas, Texas  75219-4241
Telephone:     (214) 560-2201
Telecopier:    (214) 560-2203

***Attorneys for Defendants Vista Hospice
Care, Inc. d/b/a Vistacare,VistaCare, Inc.,
Gentiva Health Services, Inc. and Odyssey
Healthcare, Inc.***

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................ii-v

A.     INTRODUCTION ..................................................................................................1

B.     FACTUAL AND PROCEDURAL BACKGROUND.....................................................2

C.     ARGUMENT AND AUTHORITIES........................................................................5

     1.     The Legal Standard For A Motion to Dismiss.......................................................5

     2.     Relator Fails to State A Claim For Successor Liability Against Odyssey............6

          a.     Relator fails to state a claim that Odyssey is liable as a success-
               in-interest under relevant Federal Code provision...................................7

          b.     Relator fails to state a claim under common law that Odyssey
               is liable as a success-in-interest ............................................................10

               i.     *VistaCare still exists – there is no successor and hence,
                    no successor liability*...............................................................10

               ii.     *Even if the common law concept of successor liability
                    is applied, Relator has not adequately pled an exception
                    to the general rule of successor non-liability* ...........................12

                  (1)     Assuming acquisition *via* stock purchase ......................13

                  (2)     Assuming acquisition *via* asset purchase.......................15

     3.     Relator Fails to State A Claim For Successor Liability Against Gentiva
          For All The Same Reasons Relator's Claim Against Odyssey Fails.................18

CONCLUSION.....................................................................................................................19

i

## TABLE OF AUTHIORITIES

**Page**

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) .................................................................................................6, 9

*Atchison, Topeka & Santa Fe Ry. Co. v. Brown & Bryant, Inc.*
    159 F.3d 358 (9th Cir. 1997) .................................................................................15, 16

*Baker v. Putnal*,
    75 F.3d 190 (5th Cir.1996) ...............................................................................................5

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007) ...............................................................................................6, 9, 16

*Bishop v. JP Morgan Chase & Co.*,
    Civil Action No. 13-1-RGA, 2013 U.S. Dist. LEIXS 109443 (D. Del. Aug. 5, 2013) ..13

*BP Care, Inc. v. Thompson*
    337 F. Supp. 2d 1021 (S.D. Ohio 2003) ........................................................................8

*Chamison v. Healthtrust*, *Inc. – The Hospital Co.*
    735 A.2d 912 (Del.Ch. 1999) .........................................................................................10

*Chi. Truck Drivers, et al. v. Tasemkin, Inc.*
    59 F.3d 48 (7th Cir. 1995) .............................................................................................15

*Chipman v. Aspenbio Pharma, Inc.*,
    Civil Case No. 11-cv-00163-REB-KMT,
    2012 U.S. Dist. LEXIS 131997 (D. Co. Sept. 17, 2012) ................................................13

*Conway v. White Trucks, Div. of White Motor Corp.*
    885 F.2d 90 (3rd Cir. 1989) ..........................................................................................11

*Deerbrook Pavilion, LLC v. Shalala*
    235 F.3d 1100 (8th Cir. 2000) .........................................................................................8

*Delta Health Group, Inc. v. United States Dep't of Health and Human Servs.*
    459 F. Supp. 2d 1207 (N.D. Fla. 2006) ...................................................................*passim*

*EEOC v. G-K-G, Inc.*
    39 F.3d 740 (7th Cir. 1994) .....................................................................................15, 17

*Guerrero v. Allison Engine Co.*
    725 N.E.2d 479 (Ind. Ct. App. 2000)..................................................................11

*Guidry v. Bank of LaPlace*
    954 F.2d 278 (5th Cir.1992) ..............................................................................6

*In re AllianceBernstein Mut. Funds Excessive Fee Litig.*
    04 Civ. 4884 (SWK), 2006 U.S. Dist. LEXIS 939 (S.D.N.Y. Jan. 11, 2006) ...............13

*In re Katrina Canal Breaches Litig.*
    495 F.3d 191 (5th Cir.2007) ..............................................................................6

*In re Welding Fume Products Liab. Litig.,*
    Case No. 1:03-CV-17000, MDL Docket No. 1535,
    2010 U.S. Dist. LEXIS 57859 (N.D. Ohio June 11, 2010).................................10, 11, 12

*Kramer v. Time Warner Inc.*
    937 F.2d 767 (2nd Cir. 1991)..............................................................................13

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*
    879 F. Supp. 407 (D. Vt. 1995)...........................................................................11

*Provider - Las Encinas Hosp. v. Intermediary - Blue Cross and Blue Shield Ass'n*
    Case No. 95-0303, 1998 WL 611452 (P.R.R.B. Sept. 11, 1998) ....................................14

*Ramirez v. Amsted Indus., Inc.*
    431 A.2d 811 (N.J. 1981).............................................................................15, 16

*Riddle v. Dyncorp.*
    66 F.3d 940 (5th Cir. 2012) ...............................................................................4

*Roy v. Bolens Corp.*
    629 F. Supp. 1070 (D. Mass. 1986) .....................................................................10

*Sigaran v. United States Bank N.A.*
    Civil Action No. H-12-3588, 2013 U.S. Dist. LEXIS 75033
    (S.D. Tex. May 29, 2013) ..................................................................................13

*Spivey v. Robertson*
    197 F.3d 772, 774 (5th Cir.1999), *cert. denied*, 530 U.S. 1229 (2000)............................5

*Teamsters Local 617 Pension and Welfare Funds v. Apollo Group*
    633 F. Supp. 2d 763 (D. Ariz. 2009) ....................................................................13

*Tex Tin Corp v. United States*
    Civ. Nos. G-96-247, G-96-272, 2006 WL 1118587 (S.D. Tex. April 25, 2006)............10

*Triad at Jeffersonville I, LLC v. Leavitt*
    563 F. Supp. 2d 1 (D.D.C 2008) ............................................................9, 14

*United States ex rel. Jajdelski v. Kaplan, Inc.*
    834 F. Supp. 2d 1182 (D. Nev. 2011) ..................................................15, 17

*United States v. Kimball Foods, Inc*.
    440 U.S. 715 (1979) ................................................................................15

*United States ex rel. Klein v. Omeros Corp*.
    897 F. Supp. 2d 1058 (W.D. Wash. 2012) .............................................15, 16

*United States ex rel. Kneepkins v. Gambro Healthcare, Inc.*
    115 F. Supp. 2d 35 (D. Mass. 2000) ......................................................7, 9, 17

*United States ex rel. Pilecki-Simko v. Chubb Inst*.
    Civ. Action No. 06-3562, 2010 WL 1076228 (D.N.J. Mar. 22, 2010).....................15, 16

*United States ex rel. Wall v. Vista Hospice Care, Inc.*
    778 F. Supp. 2d 709 (N.D. Tex. 2011) ....................................................5

*United States ex. rel. Steury v. Cardinal Health, Inc*.
    625 F.3d 262 (5th Cir. 2010) ..................................................................5

*United States v. General Battery Corp.*
    423 F.3d 294 (3d Cir. 2005) ...................................................................10

*United States v. Pisani*
    646 F.2d 83 (3d Cir. 1981) .....................................................................15

*United States v. Vernon Home Health Inc*.
    21 F.3d 693, 696 (5th Cir. 1994) ............................................................8

*W. Seattle Gen. Hosp., Inc. v. United States*
    674 F.2d 899 (Cl. Ct. 1982) ..................................................................13, 14

*White v. Cone-Blanchard Corp.*
    217 F. Supp. 2d 767 (E.D. Tex. 2002) ...................................................10, 11

## STATUTES, REGULATIONS AND RULES OF CIVIL PROCEDURE

31 U.S.C. § 3729(a)(1)-(2) (2009) ...............................................................5

31 U.S.C. § 3729(a)(1)(B) (2009) ................................................................5

iv

42 C.F.R. § 488.414(d)(3)(i) ...........................................................................................7

42 C.F.R § 489.18 .................................................................................................10, 13

42 C.F.R § 489.18(c) ......................................................................................................8

42 C.F.R. § 489.18(d) .....................................................................................................8

42 C.F.R. § 489.18(a)(3) ...........................................................................................8, 16

Federal Rule of Civil Procedure 12(b)(6) .............................................................*passim*

**OTHER**

Black's Law Dictionary 1431 (6th ed. 1990) .............................................................11

Webster's Third New International Dictionary 2282 (1993) ........................................11

## DEFENDANTS' MOTION TO DISMISS AND
## MEMORANDUM OF LAW IN SUPPORT THEREOF

Defendants Odyssey Healthcare, Inc. and Gentiva Health Services file this motion to dismiss Relator's suit for failure to state a claim upon which relief can be granted, as authorized by Federal Rule of Civil Procedure 12(b)(6).

## A.    INTRODUCTION

Relator Misty Wall ("Relator") brought this action on behalf of the United States of America against Defendants Vista Hospice Care, Inc. d/b/a Vistacare and Vistacare, Inc. (collectively, "VistaCare"), as well as Odyssey Healthcare, Inc. ("Odyssey"), and Gentiva Health Services ("Gentiva").   Relator alleges that VistaCare committed federal False Claims Act violations for fraudulent enrollment of hospice care patients and for violations of the anti-kickback and retaliation statutes.[1]   As set forth in her *Fourth* Amended False Claims Complaint and Demand for Jury Trial ("Fourth Amended Complaint"), filed earlier this month (over six years after this case was originally filed), Relator seeks to also hold Odyssey and Gentiva liable for the debts of VistaCare.   Importantly, Relator does not allege any wrongdoing on the part of Odyssey or Gentiva but, instead, seeks to hold those entities liable solely as successors-in-interest;[2] Odyssey as a successor-in-interest to VistaCare,[3] and Gentiva as a successor-in-interest to Odyssey.[4]

---

[1] Relator also alleges a violation of the Texas Medicaid Fraud Prevention Act Retaliation Provision.

[2] *See* Fourth Amended False Claims Complaint and Demand for Jury Trial ("Fourth Amended Complaint") ¶ 1.

[3] *Id.* ¶ 12.

[4] *Id.* ¶ 13.

Unfortunately, Relator's most recent attempt to expand the number of responsible parties fails as she is unable to state a claim against either Odyssey or Gentiva.  As set forth in detail herein, Relator's claims against Odyssey and Gentiva should be dismissed under Federal Rule 12(b)(6) because she fails to state a plausible claim for relief against either Odyssey or Gentiva as successors-in-interest.

### B.   FACTUAL AND PROCEDURAL BACKGROUND

VistaCare provides hospice services in multiple states.[5]  Relator was a social worker at VistaCare's Denton, Texas facility for approximately 24 months, from April 2003 until April 2005.[6]  Relator contends that she "had occasion" to work in VistaCare's Greenville, South Carolina, Fort Worth and Dallas, Texas offices, and had contact with VistaCare headquarters in Scottsdale, Arizona.[7]  Relator also contends that she "did telephone mentoring" with social workers at VistaCare's Oklahoma City and Tulsa, Oklahoma offices.[8]  Relator, however, has never alleged that she worked at or with any of VistaCare's numerous other sites located in fourteen states across the country.

Relator alleges that Odyssey acquired VistaCare in March of 2008, three years after Relator's employment with VistaCare ended.[9]  Relator further alleges that Gentiva acquired

---

[5] *Id.* ¶ 1.

[6] *Id.* ¶ 2.

[7] *Id.*

[8] *Id.*

[9] *Id.* ¶¶ 1, 12.

**DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM
OF LAW IN SUPPORT THEREOF – Page 2**

Odyssey in August of 2010, more than five years after Relator's employment with VistaCare ended.[10]

Relator filed her original complaint on April 6, 2007.  Relator filed her First Amended Complaint on September 29, 2009.[11]  In her First Amended Complaint, Relator alleged that VistaCare pursued a practice and policy of certifying patients for hospice care who were not eligible and provided kickbacks to referral sources and patients to increase census.[12]  Relator also named Odyssey as a Defendant, contending it was the successor-in-interest to VistaCare.[13]  At that time, the United States declined to intervene in the action.[14]  The Court ordered the case unsealed on October 5, 2009.[15]

Defendants VistaCare and Odyssey filed a motion to dismiss the First Amended Complaint on March 30, 2010.[16]  The Court issued an Order on the Motion to Dismiss on March 9, 2011, dismissing all Counts but Count Four (Relator's anti-kickback statute claim) of the First Amended Complaint.  Relator was given leave to amend Counts One, Two, Seven, Eight, Nine,

---

[10] *Id.* ¶¶ 1, 13.

[11] *See* Docket Entry No. 25.

[12] *See id.*

[13] *See id.* ¶ 12.

[14] *See* Docket Entry No. 26.  To date, the United States and the States of Indiana, Massachusetts, Nevada, New Mexico and Texas have not intervened in the case.

[15] *See* Docket Entry No. 27.

[16] *See* Docket Entry No. 39.  Gentiva was not named as a Defendant until Relator's Fourth Amended Complaint.

Ten and Twelve of the First Amended Complaint, all of which were dismissed without prejudice.[17]

Relator filed the Second Amended Complaint and an Addendum under seal on April 12, 2011.[18]  Defendants VistaCare and Odyssey filed a Motion to Dismiss Relator's Second Amended Complaint on June 9, 2011.[19]  While that motion was pending, Relator sought leave to file the Third Amended Complaint based on the Fifth Circuit's decision in *Riddle v. Dyncorp*., 66 F.3d 940 (5th Cir. 2012), which the Court granted on March 15, 2012.[20]  On March 21, 2012, Defendants VistaCare and Odyssey withdrew their Motion to Dismiss Relator's Second Amended Complaint.[21]

Defendants VistaCare and Odyssey filed their Motion to Dismiss Relator's Third Amended Complaint on April 2, 2012.[22]  The Court granted the motion to dismiss with respect to Count Four of the Third Amended Complaint (Relator's *Sabine Pilot* Wrongful Discharge Claim) and otherwise denied the motion.[23]

Relator filed the Fourth Amended Complaint on September 6, 2013.[24]  In the Fourth Amended Complaint, Relator re-alleges the improper enrollment claim in which she alleges

---

[17] *See* Docket Entry No. 52.

[18] *See* Docket Entry No 58.

[19] *See* Docket Entry No. 62 (filed under seal).

[20] *See* Docket Entry Nos. 76, 80.

[21] *See* Docket Entry No. 82.

[22] *See* Docket Entry No. 85 (filed under seal).

[23] *See* Docket Entry No 91.

[24] *See* Docket Entry No. 121.

VistaCare violated 31 U.S.C. § 3729(a)(1)-(2) and 31 U.S.C. § 3729(a)(1)(B) (2009)[25] of the FCA by pursuing a pattern and practice of fraudulently certifying and recertifying patients for enrollment or continued enrollment in hospice (Count One).[26]  Relator also re-alleges the anti-kickback claim against VistaCare (Count Two).[27]  Finally, Relator re-alleges claims against VistaCare for retaliation under FCA and TMPFA (Counts Three and Four).[28]  No other claims are alleged.  Defendants Odyssey and Gentiva (added for the first time in Relator's Fourth Amended Complaint) are named <u>solely</u> in their capacity as successors-in-interest.[29]

## C.     ARGUMENT AND AUTHORITIES

### 1.     The Legal Standard For A Motion To Dismiss.

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted.[30]  In deciding a 12(b)(6) motion, a court cannot look beyond the face of the pleadings,[31] and must accept "all well-pleaded facts as true, viewing them in the light most

---

[25] On May 20, 2009, Congress enacted the Fraud Enforcement and Recovery Act of 2009 ("FERA"), which amended the FCA, and reorganized various subsections.  *See United States ex rel. Wall v. Vista Hospice Care, Inc.*, 778 F. Supp. 2d 709, 712 n.3 (N.D. Tex. 2011).  The current version of these statutes is found at 31 U.S.C. § 3729(a)(1)(A) (2009) (presentment theory).  *See also* 31 U.S.C. § 3729(a)(1)(B) (2009) (false record theory).  The Fourth Amended Complaint alleges conduct that occurred before the amendment, and therefore, the "presentment theory" is governed by the pre-FERA statute. *See Wall*, 778 F. Supp. 2d at 712 n.3.  As the original Complaint here was pending as of June 7, 2008, however, the Court has held that the FERA amendments apply to the false record theory.  *Id*. at 712 n.4 (citing *United States ex. rel. Steury v. Cardinal Health, Inc*., 625 F.3d 262, 267 n.1 (5th Cir. 2010) (concluding that FERA applies to actions under the false record provision, even if the payment request was made before June 7, 2008)).

[26] *See* Fourth Amended Complaint ¶¶ 81-85.

[27] *See id.* ¶¶ 86-91.

[28] *See id.* ¶¶ 92-99.

[29] *See id* ¶¶ 1, 12, 13.

[30] Fed.R.Civ.P. 12(b)(6).

[31] *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir.1999), *cert. denied*, 530 U.S. 1229 (2000).

favorable to the plaintiff."[32]   To state a claim upon which relief may be granted, plaintiff must plead "enough facts to state a claim to relief that is plausible on its face,"[33] and must plead those facts with enough specificity "to raise a right to relief above the speculative level."[34]   A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.[35]

To survive a motion to dismiss, pleadings must show specific, well-pleaded facts, not mere conclusory allegations.[36]   Moreover, a court is not bound to accept as true a legal conclusion couched as a factual allegation.[37]   A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice.[38]   If, after application of this standard and consideration of these factors, plaintiff has "not nudged [her] claims across the line from conceivable to plausible, [her] complaint must be dismissed."[39]

### 2.   Relator Fails To State A Claim For Successor Liability Against Odyssey.

As set forth above, Relator's claims against Odyssey are solely based on the theory that Odyssey is a successor-in-interest to VistaCare.  Relator concedes that Odyssey is not being sued

---

[32] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir.2007).

[33] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[34] *Id.* at 555.

[35] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[36] *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir.1992).

[37] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

[38] *See id.*

[39] *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

for any wrongdoing in its own right.[40]  Relator's claims against Odyssey fail, however, because she does not state a viable claim for successor liability under either the relevant Federal Code provisions or common law.

### a. Relator fails to state a claim that Odyssey is liable as a successor-in-interest under relevant Federal Code provisions.

Relator alleges that Odyssey acquired VistaCare in 2008.[41]  It is well-settled that "[o]wnership – even total ownership – of a corporation does not by itself impart the corporation's liabilities to the owner, and that rule is not abated simply because the owner happens to be another corporation."[42]  Recognizing this black-letter law, Relator attempts to hold Odyssey liable, not as an "owner," but solely as a "successor-in-interest."

No federal statute or regulation expressly authorizes imposition of civil monetary penalties, like those being sought by Relator, against a successor.  In fact, "neither the Medicare Act nor the regulations directly mention successor liability for [civil monetary penalties]."[43]

With respect to successor liability, the regulations explain that a Medicare provider facility may not avoid a remedy on the basis that it underwent a change of ownership (often referred to as a "CHOW").[44]  The regulations further provide that when there is a change of ownership, the existing Medicare provider agreement will automatically be assigned to the new

---

[40] *See* Fourth Amended Complaint ¶¶ 1, 12.

[41] *See id.*

[42] *United States ex rel. Kneepkins v. Gambro Healthcare, Inc.*, 115 F. Supp. 2d 35, 39 (D. Mass. 2000).

[43] *See Delta Health Group, Inc. v. United States Dep't of Health and Human Servs.*, 459 F. Supp. 2d 1207, 1221 (N.D. Fla. 2006).

[44] *See* 42 C.F.R. § 488.414(d)(3)(i).

**DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM**
**OF LAW IN SUPPORT THEREOF – Page 7**

owner,[45] and that an assigned agreement is subject to all statutes and regulations and to the terms and conditions under which it was originally issued.[46]   As set forth in *Delta Health Group, Inc.*, courts have interpreted these regulations to apply to and justify successor liability for civil monetary penalties in situations in which there was a change of ownership and a resulting automatic assignment of a provider agreement – meaning that a "new owner who assumes an existing provider agreement and number . . . will be responsible for the prior owner's liabilities."[47]

However, entirely missing from Relator's Complaint are any allegations of the key factors by which successor liability may be recognized under these federal regulations.  Relator simply states, in conclusory fashion, that Odyssey "acquired and maintains all liabilities for VistaCare."[48]   Relator completely ignores the fact that not all acquisitions result in a successor or a change of ownership which, in turn, would subject the new owner to liability under 42 C.F.R. § 489.18.  Indeed, 42 C.F.R. § 489.18, which forms "the principal basis for successor liability,"[49] recognizes that not all acquisitions result in a change of ownership for Medicare purposes.  That regulation states, unequivocally, that "*[t]ransfer of corporate stock or merger of another corporation into the provider corporation does not constitute change of ownership*."[50]   Absent

---

[45] *See* 42 C.F.R § 489.18(c).

[46] *See* 42 C.F.R. § 489.18(d).

[47] *See Delta Health Group, Inc.*, 459 F. Supp. 2d at 1221-22 (citing *United States v. Vernon Home Health Inc.*, 21 F.3d 693, 696 (5th Cir. 1994), *Deerbrook Pavilion, LLC v. Shalala*, 235 F.3d 1100, 1103-05 (8th Cir. 2000), *BP Care, Inc. v. Thompson*, 337 F. Supp. 2d 1021, 1028-30 (S.D. Ohio 2003).

[48] *See* Fourth Amended Complaint ¶ 12.

[49] *Delta Health Group, Inc.*, 459 F. Supp. 2d at 1224.

[50] 42 C.F.R. § 489.18(a)(3)(emphasis added).

**DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM**
**OF LAW IN SUPPORT THEREOF – Page 8**

the automatic assignment of a provider agreement, *by virtue of a change in ownership*, liability remains solely with the provider.[51]

Critically, Relator fails to allege that there was a change of ownership for Medicare purposes and similarly fails to allege that VistaCare's existing provider agreement was assigned to Odyssey. Relator also fails to divulge any factual bases to support her conclusory claim that Odyssey "acquired and maintains all liabilities" of VistaCare or her claim that Odyssey "controls" VistaCare's operations. These assertions are nothing more than legal conclusions couched as factual allegations and threadbare, formulaic recitation of elements supported by conclusory statements – neither of which is sufficient to state a cause of action.[52]

Based entirely on these legal conclusions couched as factual allegations, Relator concludes that Odyssey "is the successor-in-interest to [VistaCare]."[53] Relator's simplistic unsupported statements are wholly insufficient for the purposes of stating a claim that Odyssey is liable as a successor-in-interest under any relevant federal regulation. Indeed, concluding, as Relator does here, that a party is liable as a successor-in-interest without divulging any factual basis "is the sort of 'bald assertion' that cannot pass muster."[54]

---

[51] *Triad at Jeffersonville I, LLC v. Leavitt*, 563 F. Supp. 2d 1, 7 (D.D.C 2008) ("Finally, a provider may choose to reject assignment of an existing Provider Agreement in its 855A application. In such an instance, the new owner avoids responsibility for any overpayments made to the former owner because 'there would be no CHOW of the Medicare agreement [so] the previous owner would still be responsible for any outstanding overpayments.'") (citing Medicare Financial Management Manual, Ch. 3, § 130). *See also Delta Health Group, Inc.*, 459 F. Supp. 2d at 1225 ("At the risk of being redundant, it bears repeating that Plaintiff did have a choice: not to accept assignment of the provider agreement…In sum it appears well established that the *new owner who assumes an existing provider agreement* has successor liability for unresolved CMPs…") (emphasis added).

[52] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

[53] *See* Fourth Amended Complaint ¶ 12.

[54] *Gambro*, 115 F. Supp. 2d at 40 ("The pleadings also state the conclusion – without divulging any factual basis – that Gambro is liable as a successor-in-interest, but this is the sort of 'bald assertion'…that cannot past muster.")

**DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT THEREOF – Page 9**

For Relator to state a claim that Odyssey is liable as a successor to VistaCare under the relevant federal regulations, she would, at the very least, need to plead facts implicating those regulations.  Relator fails to do so – making no mention of a change in ownership under 42 C.F.R. § 489.18 or an assignment of a Medicare provider agreement from VistaCare to Odyssey. In effect, Relator has failed to allege that Odyssey is even a successor, under Medicare regulations, to VistaCare.  Thus, Relator's allegations are insufficient to state a claim that Odyssey is liable as a successor-in-interest under any relevant federal regulation.

**b.      Relator fails to state a claim under common law that Odyssey is liable as a successor-in-interest.**

Absent any basis for holding Odyssey liable as a successor-in-interest under the federal regulations themselves, Relator must rely on common law principals of successor liability to state a claim against Odyssey.  Relator again fails to state a viable claim against Odyssey.

i. *VistaCare still exists - there is no successor and hence, no successor liability*.

According to Relator's own pleadings, VistaCare still exists and continues to operate.[55] This fact alone precludes Relator from stating a viable common law claim of successor liability against Odyssey.  It is axiomatic (and widely held) that "if the original entity still exists, there is no successor – and no successor liability."[56]  Indeed, it would strain the definition of successor to

---

[55] *See e.g.* Fourth Amended Complaint ¶¶ 1, 10.

[56] *In re: Welding Fume Products Liab. Litig.*, Case No. 1:03-CV-17000, MDL Docket No. 1535, 2010 U.S. Dist. LEXIS 57859, at *42 (N.D. Ohio June 11, 2010); *see also, e.g., White v. Cone-Blanchard Corp.*, 217 F. Supp. 2d 767, 772 (E.D. Tex. 2002) ("[I]t is axiomatic that to establish corporate successor liability there must in fact be a corporate successor."); *Roy v. Bolens Corp.*, 629 F. Supp. 1070, 1073 (D. Mass. 1986) (holding that successor liability doctrine does not apply where acquired company remains in existence); *Chamison v. Healthtrust, Inc. – The Hospital Co.*, 735 A.2d 912, 919 (Del.Ch. 1999) ("Chamison similarly cannot recover from HealthTrust . . . because HealthTrust is *not* a successor-in-interest to EPIC.  EPIC still exists and is a *subsidiary* of HealthTrust.") (emphasis in original) (footnote omitted); *Tex Tin Corp v. United States*, Civ. Nos. G-96-247, G-96-272, 2006 WL 1118587, at *4-5 (S.D. Tex. April 25, 2006) (citing *United States v. General Battery Corp.*, 423 F.3d 294, 298 (3d Cir. 2005)

find a successor and its predecessor both continuing to exist simultaneously.[57]

On this point, the case *In re: Welding Fume Products Liability Litigation*[58] is particularly instructive. When addressing the concept of successor liability and its inapplicability in instances where the wrongdoing entity is still in existence, the court in the *Welding Fume Products Liability Litigation* case noted as follows:

> There can be no successor liability in these MDL cases because Hobart and Miller Electric still exist and continue to operate separately as subsidiaries of ITW. ITW simply purchased their issued and outstanding capital stock, while each retained its liabilities. Moreover, courts have recognized that the "reverse triangular merger,"[59] by which ITW obtained Hobart, does not result in the parent company (ITW) assuming the liabilities of the acquired company (Hobart). Even if plaintiffs are correct that Hobart, Miller Electric, and ITW have overlapping operations (*e.g.*, employee participation in a single pension plan, use of the same vendor for payroll services, and sharing of executive personnel), this does not

---

(applying federal common law to the question of whether an entity or its subsidiary who purchased a chemical division of a foreign company were successors to the liabilities of the seller for CERCLA liability purposes; the District Court noted that the selling entity maintained continuing operations in eliminating one potential ground for assessing successor liability). Even to the extent the law on successor liability may differ from state to state, it remains a bedrock principle that if the original entity still exists, there is no successor – and therefore, no successor liability. This remains true even in states that have adopted more lenient doctrines of successor liability. *See Guerrero v. Allison Engine Co.*, 725 N.E.2d 479, 487 (Ind. Ct. App. 2000) (holding that "a successor corporation is liable only when the predecessor corporation no longer exists," and noting that a "similar requirement is found [even] among that minority of states applying the [more-lenient] product line exception"); *Conway v. White Trucks, Div. of White Motor Corp.*, 885 F.2d 90, 95 (3rd Cir. 1989) ("If a remedy against the original manufacturer was available, however, the consumer has not been obliged to bear the risk[,] and the justification for imposing successor liability evaporates.").

[57] *White v. Cone-Blanchard Corp.*, 217 F. Supp. 2d 767, 772 (E.D. Tex. 2002) ("Another court has stated, and this court agrees, that '[i]t is axiomatic that to establish corporate successor liability there must in fact be a corporate successor.' In this regard, it is important to note that until approximately June, 2001, CBMC still existed. Thus, for the court to find that CBC was a successor corporation of CBMC, it would have to find that both the successor and its predecessor existed simultaneously for a period of roughly four years. Such a ruling would strain the definition of successor.") (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 879 F. Supp. 407, 410 (D. Vt. 1995) and citing Webster's Third New International Dictionary 2282 (1993) and Black's Law Dictionary 1431 (6th ed. 1990)).

[58] Case No. 1:03-CV-17000, MDL Docket No. 1535, 2010 U.S. Dist. LEXIS 57859 (N.D. Ohio June 11, 2010).

[59] A reverse triangular merger is a "merger of target with a specialty formed subsidiary of the acquirer, which then becomes the sole shareholder of the newly merged subsidiary." *In re: Welding Fume Products*, 2010 U.S. Dist. LEXIS 57859, at *45 n.67.

**DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM
OF LAW IN SUPPORT THEREOF – Page 11**

mean that Hobart and Miller Electric ceased to exist. Indeed, plaintiffs have not created a genuine issue of fact suggesting that Hobart or Miller Electric are unable to pay their claimants – the driving concern behind successor liability. Other courts have rejected similar claims of successor liability based on ITW's acquisitions of Hobart and Miller Electric. This Court does so as well. In short, if plaintiffs have viable claims against Hobart and Miller Electric, plaintiffs can pursue those claims against Hobart and Miller Electric – not against ITW.[60]

In this instance, Relator cannot manufacture a successor liability claim by simply making scant general references and conclusory statements that Odyssey is the successor-in-interest to VistaCare.[61]  It is undisputed that VistaCare still exists and is operating.[62]  Relator admits that both "VistaCare and Odyssey are providers of hospice services."[63]  In light of this (and the abundance of caselaw addressing the issue), there can be no successor liability against Odyssey.

  ii. _Even if the common law concept of successor liability is applied,_
      _Relator has not adequately pled an exception to the general rule of_
      _successor non-liability._

Relator alleges that on October 6, 2008, Odyssey acquired VistaCare.  Relator fails to allege or plead any facts with respect to such acquisition.  Ordinarily, this would be noteworthy because the manner by which Odyssey acquired VistaCare, whether by stock purchase or asset purchase, is theoretically relevant in determining Odyssey's liability.  In this case, however, the exact manner by which VistaCare was acquired is immaterial because Relator has failed to sufficiently allege facts giving rise to Odyssey's liability regardless of how the acquisition was structured.

---

[60] _Id._ at *44-45.

[61] _See_ Fourth Amended Complaint ¶ 12.

[62] _See id._ ¶¶ 1, 10.

[63] _See id._

(1) Assuming acquisition *via* stock purchase.

Assuming Odyssey's acquisition of VistaCare was via a stock purchase, which it was,[64]

Relator cannot state a claim of successor liability against Odyssey.  As set forth above, 42 C.F.R

§ 489.18 provides that transfer of corporate stock or the merger of another corporation into the

provider corporation does not constitute a change of ownership, sufficient to trigger successor

liability through assumption of a provider agreement.  Indeed, "***[t]he purchase of a Medicare***

***provider's stock is not in itself an event that has an effect on the Medicare system***."[65]  A mere

---

[64]     *See* VistaCare, Inc.'s filed Form 8-K, dated January 15, 2008, also available at http://www.sec.gov/Archives/edgar/data/787030/000095015308000060/p74854e8vk.htm, Item 1.01 ("Subject to the terms and conditions of the Merger Agreement, Merger Sub [OHC Investment, Inc., a wholly-owned subsidiary of Odyssey HealthCare Holding Company]  will commence a tender offer (the 'Offer') to purchase all of [VistaCare, Inc.'s] outstanding shares of Class A common stock…Upon successful completion of the Offer, and subject to the satisfaction or waiver of the conditions set forth in the Merger Agreement, Merger Sub will be merged (the 'Merger') with and into the Company [VistaCare, Inc.] and the Company [VistaCare, Inc.] will survive the Merger as a wholly-owned subsidiary of Odyssey.").

        It is well settled that, because documents like VistaCare's filed Form 8-K are publicly filed, courts may consider them on a motion to dismiss.  Defendants request that the Court do so here and take judicial notice thereof.  *See In re: AllianceBernstein Mut. Funds Excessive Fee Litig.*, 04 Civ. 4884 (SWK), 2006 U.S. Dist. LEXIS 939, at *8 n.4 (S.D.N.Y. Jan. 11, 2006) ("As a publicly available report filed with the SEC, the court may consider this information on a motion to dismiss."); *Sigaran v. United States Bank N.A.*, Civil Action No. H-12-3588, 2013 U.S. Dist. LEXIS 75033, at *15 n.4 (S.D. Tex. May 29, 2013) ("The trust's PSA was filed with the Securities and Exchange Commission (SEC).  '[A] court may also take judicial notice of documents . . . filed with the [SEC], and may consider such documents in determining a motion to dismiss.'").  *See also*, *Teamsters Local 617 Pension and Welfare Funds v. Apollo Group*, 633 F. Supp. 2d 763, 776 (D. Ariz. 2009) (taking judicial notice of the content of various SEC filings in motion to dismiss);  *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2nd Cir. 1991) ("Finally, we believe that under such circumstances, a district court may take judicial notice of the contents of relevant public disclosure documents required to be filed with the SEC as facts are 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'"); *Bishop v. JP Morgan Chase & Co.*, Civil Action No. 13-1-RGA, 2013 U.S. Dist. LEIXS 109443, at *4 (D. Del. Aug. 5, 2013) ("In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of the claim.  One exhibit is attached to the complaint – the Corporate Assignment, and the defendant's motion to dismiss includes documents from the mortgage foreclosure suit in New Castle County Superior Court relating to the property at issue, which are matters of public record.  That those matters can be considered is not subject to doubt.") (internal citations omitted); *Chipman v. Aspenbio Pharma, Inc.*, Civil Case No. 11-cv-00163-REB-KMT, 2012 U.S. Dist. LEXIS 131997, at *7-8 (D. Co. Sept. 17, 2012) ("It is well-settled that in resolving a motion to dismiss, the court may consider documents referenced in the complaint or that otherwise inform the basis of the plaintiff's claims.  In addition, 'a court is permitted to take judicial notice of . . . facts which are a matter of public record.'").

[65] *W. Seattle Gen. Hosp., Inc. v. United States*, 674 F.2d 899, 901 (Cl. Ct. 1982).

**DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM**
**OF LAW IN SUPPORT THEREOF – Page 13**

change in stock ownership changes neither the identity nor the operations of a provider.[66]   This

rule applies to the bare acquisition of a provider's stock by another provider because "[s]uch an

acquisition does not affect the acquiring provider's own delivery of services and it affects the

provider that issued the stock only to the extent of a change in its stockholders, inconsequential

in itself."[67]

Moreover, courts and CMS take the position that liability follows the provider agreement

regardless of how the parties address the issue in the transactional documents or how state law

would resolve the issue.[68]   Because Odyssey acquired VistaCare through an acquisition of stock,

there is no change of ownership, no automatic assignment of VistaCare's provider agreement to

Odyssey, and thus, liability remains with VistaCare (which unquestionably continues to exist and

operate) under its provider agreement.   Therefore, Relator cannot state a claim against Odyssey

for successor liability.

---

[66] *See id*; *see also, Provider - Las Encinas Hosp. v. Intermediary - Blue Cross and Blue Shield Ass'n*, Case No. 95-0303, 1998 WL 611452 (P.R.R.B. Sept. 11, 1998) (acknowledging that provider Reimbursement Review Board of the Department of Health and Human Services accepted parties' agreement that transfer of stock ownership pursuant to a leveraged buy-out, in which Medicare provider agreement was not affected because the corporate structure remained intact, was not a change of ownership for Medicare purposes).

[67] *W. Seattle Gen. Hosp., Inc.,* 674 F.2d 899 at 901.

[68] *See inter alia, Leavitt*, 563 F. Supp. 2d at 7 ("Finally, a provider may choose to reject assignment of an existing Provider Agreement in its 855A application.  In such an instance, the new owner avoids responsibility for any overpayments made to the former owner because 'there would be no CHOW of the Medicare agreement [so] the previous owner would still be responsible for any outstanding overpayments.'") (citing Medicare Financial Management Manual, Ch. 3, § 130).  *See also Delta Health Group, Inc.*, 459 F. Supp. 2d at 1225 ("At the risk of being redundant, it bears repeating that Plaintiff did have a choice: not to accept assignment of the provider agreement…In sum it appears well established that the *new owner who assumes an existing provider agreement* has successor liability for unresolved CMPs…") (emphasis added).

**DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM**
**OF LAW IN SUPPORT THEREOF – Page 14**

(2) Assuming acquisition *via* asset purchase.

Even if Relator had alleged that Odyssey purchased VistaCare's assets, which she didn't (presumably because she knows it was a stock purchase), she fails to state a claim for successor liability.  It is well-settled that a corporation that purchases the assets of another corporation does not thereby become liable for the selling corporation's obligations.[69]  Successor liability is an equitable doctrine that provides an exception from the general rule that a purchaser of assets does not acquire a seller's liabilities.[70]  The doctrine of successor liability applies to False Claims Act cases.[71]

Because federal law governs questions involving the rights of the United States arising under nationwide federal programs, like the FCA, courts have typically applied the federal common law of successor liability in determining whether an exception to the general non-assumption of liability applies.[72]  There is a divergence among the courts, however, as to the federal common law exceptions to the general rule of successor non-liability.  Some courts apply a four-prong "traditional" approach,[73] while others apply a broader two-pronged approach.[74]

---

[69] *United States ex rel. Jajdelski v. Kaplan, Inc.*, 834 F. Supp. 2d 1182, 1185-86 (D. Nev. 2011).

[70] *Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Tasemkin, Inc.*, 59 F.3d 48, 49 (7th Cir. 1995); *EEOC v. G-K-G, Inc.*, 39 F.3d 740, 747-48 (7th Cir. 1994).

[71] *Jajdelski*, 834 F. Supp. 2d at 1186.

[72] *United States ex rel. Klein v. Omeros Corp.*, 897 F. Supp. 2d 1058, 1065 (W.D. Wash. 2012) (citing *United States v. Kimball Foods, Inc.*, 440 U.S. 715, 726 (1979); *Vernon Home Health, Inc.*, 21 F.3d at 695-96; *United States v. Pisani*, 646 F.2d 83, 86 (3d Cir. 1981).

[73] *Omeros Corp.*, 897 F. Supp. 2d at 1067; *Atchison, Topeka & Santa Fe Ry. Co. v. Brown & Bryant, Inc.*, 159 F.3d 358, 362 (9th Cir. 1997); *United States ex rel. Pilecki-Simko v. Chubb Inst.*, Civ. Action No. 06-3562, 2010 WL 1076228, at *15-16 (D.N.J. Mar. 22, 2010); *Ramirez v. Amsted Indus., Inc.*, 431 A.2d 811, 815 (N.J. 1981).

[74] *G-K-G, Inc.*, 39 F.3d at 747-48; *Jajdelski*, 834 F. Supp. 2d at 1185-86.

Even if she had alleged that Odyssey acquired VistaCare via an asset purchase, Relator fails to state a claim under either common-law approach.

Under the traditional four-pronged approach, successors are only liable where (1) the purchasing corporation expressly or impliedly agreed to assume such debts and liabilities; (2) the transaction amounts to a consolidation or merger[75] of the seller and purchaser; (3) the purchasing corporation is merely a continuation of the selling corporation; or (4) the transaction is entered into fraudulently in order to escape responsibility for such debts and liabilities.[76]   In this case, Relator has failed to allege, let alone state any factual basis for any of these exceptions.   There are no allegations that Odyssey expressly or impliedly agreed to assume VistaCare's liabilities, no allegations that the acquisition amounted to a consolidation or merger, no allegations that Odyssey is merely a continuation of VistaCare, and no allegations that the transaction between Odyssey and VistaCare was entered into fraudulently to escape responsibility.   Again, Relator relies solely on legal conclusions couched as factual allegations.   Relator fails to plead any facts, let alone facts with enough specificity "to raise a right to relief above the speculative level."[77] As such, Relator fails to state a claim against Odyssey for successor liability under the traditional four-pronged approach.

---

[75] For the purpose of determining whether a change of ownership has occurred, thus implicating potential successor liability, the Code of Federal Regulations makes a distinction between "mergers" and "consolidations" which result in the creation of a new corporation and those that do not.   *See* 42 C.F.R 489.18(a)(3) ("The merger of the provider corporation into another corporation, or the consolidation of two or more corporations, *resulting in the creation of a new corporation* constitutes a change of ownership.   Transfer of corporate stock or the merger of another corporation into the provider corporation does not constitute change of ownership.") (emphasis added).

[76] *Omeros Corp.*, 897 F. Supp. 2d at 1065; *Atchison, Topeka & Santa Fe Ry. Co.*, 159 F.3d at 361; *Chubb Inst.,* 2010 WL 1076228, at *15; *Ramirez*, 431 A.2d at 815.

[77] *Twombly*, 550 U.S. at 555.

Relator suffers the same fate even under the broader, two-pronged approach.  Under the two-pronged approach, two conditions must be met in order for successor liability to take effect.[78]  First, the successor must have had notice of the claim before the acquisition.  Second, there must be substantial continuity in the operation of the business before and after the sale.[79]  Relator again fails to state a claim as she fails to allege or provide any supporting facts that Odyssey had knowledge of the claims against VistaCare before the acquisition or that there was a substantial continuity in the operation of VistaCare before and after the sale.[80]  Instead, based entirely on legal conclusions couched as factual allegations, Relator simply concludes that Odyssey "is the successor-in-interest to [VistaCare]."[81]  That is wholly insufficient for the purposes of stating a claim that Odyssey is liable as a successor-in-interest under any common law analysis.  To reiterate, concluding, as Relator does here, that Odyssey is liable as a successor-in-interest without divulging any factual basis is, again, "the sort of 'bald assertion' that cannot pass muster."[82]

Accordingly, even if Relator alleged, which she didn't, that Odyssey acquired the assets of VistaCare, and regardless of which federal common law analysis applies, Relator has wholly

---

[78] *Jajdelski*, 834 F. Supp. 2d at 1185-86.

[79] *Id.* (citing *G-K-G, Inc.*, 39 F.3d 740, 747-48 (7th Cir. 1994)).

[80] Indeed, the publically-filed SEC documents reveal that Odyssey had no knowledge of any claims against VistaCare.  *See* VistaCare, Inc.'s filed Form 8-K, dated January 15, 2008, available at http://www.sec.gov/Archives/edgar/data/787030/000095015308000060/p74854e8vk.htm, Ex. 2.1, pp. 21-22.  It is well settled that, because documents like VistaCare's filed Form 8-K are publicly filed, courts may consider them on a motion to dismiss.  Defendants request that the Court do so here and take judicial notice thereof.  *See* n. 64, *supra.*

[81] *See* Fourth Amended Complaint ¶ 12.

[82] *Gambro*, 115 F. Supp. 2d at 40 ("The pleadings also state the conclusion – without divulging any factual basis – that Gambro is liable as a successor-in-interest, but this is the sort of 'bald assertion'…that cannot past muster.")

**DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM**
**OF LAW IN SUPPORT THEREOF – Page 17**

failed to allege any facts which, if true, would give rise to Odyssey being held liable as a successor-in-interest.  As such, Relator's claims against Odyssey should be dismissed.

**3.**       **Relator Fails to State A Claim For Successor Liability Against Gentiva For All The Same Reasons Relator's Claim Against Odyssey Fails.**

Initially, it is important to recognize that Relator is not alleging that Gentiva is a successor-in-interest to VistaCare – instead Relator alleges that Gentiva is liable as a successor-in-interest to Odyssey.[83]   As such, because Relator has failed to state a claim for successor liability against Odyssey, she has similarly failed to state a claim for successor liability against Gentiva.

Even if Gentiva could be liable as a successor to Odyssey, despite the fact that no viable claim has been pled against Odyssey, Relator's claims against Gentiva fail for the same reasons that her claims against Odyssey fail.

In an attempt to demonstrate that Gentiva (*via* Gentiva's acquisition of Odyssey in 2010) is a successor-in-interest to Odyssey (a purported successor-in-interest to VistaCare *via* Odyssey's acquisition of VistaCare's stock in 2008), Relator alleges that (1) "VistaCare's corporate address is listed as the Gentiva Corporate Headquarters;"[84] (2) "[t]he VistaCare website directs all public inquired to Gentiva President and CEO Tony Strange: Tony.Strange@gentiva.com;"[85] (3) "VistaCare employees are eligible for Gentiva stock options and retirement programs;"[86] and (4) "[i]n its public filings and shareholder reports, Gentiva

---

[83] *See* Fourth Amended Complaint ¶ 13.

[84] Fourth Amended Complaint ¶ 13.

[85] *See id.*

[86] *Id.*

makes no distinction between the hospice locations it operated under the VistaCare name and those it operates under the Odyssey or Gentiva brands."[87]   These allegations are a red-herring and fall woefully short of stating a viable claim of successor liability against Gentiva for all of the same reasons Relator's successor liability claim against Odyssey fails.   First, as with her claim against Odyssey, entirely missing from Relator's Complaint are any allegations of the key factors by which successor liability against Gentiva may be recognized under the relevant federal regulations.   Relator has not alleged that there has been a change of ownership as contemplated by 42 C.F.R. § 489.18, nor has Relator alleged that VistaCare's (or Odyssey's) existing provider agreement was assigned to Gentiva.   Second, Relator's statements cannot give rise to a successor liability against Gentiva in this instance because Odyssey (like VistaCare) still exists and is operating.[88]   Finally, for the same reasons set forth above, Relator has failed to sufficiently allege facts which would give rise to successor liability under federal common law.[89]

For these reasons, Realtor has failed to state a claim against Gentiva.   As such, dismissal under 12(b)(6) is warranted.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendants Odyssey Healthcare, Inc. and Gentiva Health Services respectfully request that the Court grant Defendants' Motion to Dismiss Relator's Fourth Amended Complaint as to these Defendants.   Defendants also request any additional relief the Court finds necessary and just.

---

[87] *Id.*

[88] *See supra* Part 2(b)(i).

[89] *See supra* Part 2(b)(ii).

Dated:  September 27, 2013.

**LACKEY HERSHMAN, LLP**

/s/ Jamie R. Welton
Robert M. Castle, III
State Bar No. 24036338
Jamie R. Welton
State Bar No. 24013732
William C. McMurrey
State Bar No. 13811100

3102 Oak Lawn Avenue, Suite 777
Dallas, Texas  75219-4241
Telephone:      (214) 560-2201
Telecopier:     (214) 560-2203

***Attorneys for Defendants Vista Hospice
Care, Inc. d/b/a Vistacare,VistaCare, Inc.,
Gentiva Health Services, Inc. and Odyssey
Healthcare, Inc.***

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 27th day of September, 2013, I caused a true and correct copy of the above and foregoing document to be served on all counsel of record via the Court's electronic filing system.

/s/ Jamie R. Welton
Jamie R. Welton