IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| ex rel. MISTY WALL, § | |
| § | |
| Relator, § | |
| § | No. 3:07-cv-0604-M |
| v. § | |
| § | |
| VISTA HOSPICE CARE, INC. d/b/a § | |
| VISTACARE, et al., § | |
| § | |
| Defendants. § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Relator Misty Wall's Motion for Leave to Amend the Scheduling Order, to Amend the Complaint, and for Relief from the Court's Prior Order [Docket Entry #248]. For the reasons stated below, the Motion is **DENIED**.

**I.     BACKGROUND**

Relator claims Defendants Vista Hospice Care, Inc. and VistaCare, Inc. ("the VistaCare entities"), violated the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, by: 1) certifying ineligible individuals for enrollment or continued enrollment in hospice care and falsely representing to Medicare, in order to receive reimbursements, the medical condition of patients; 2) engaging in schemes to pay kickbacks to promote hospice enrollment; and 3) retaliating against Relator as a result of her lawful acts done in furtherance of this action. Relator claims this alleged retaliation also violated the Texas Medicaid Fraud Prevention Act.

On April 8, 2007, Relator filed her Original Complaint [Docket Entry #1]. Relator amended her complaint on September 29, 2009, adding as a Defendant Odyssey Healthcare Inc., which had acquired the VistaCare entities in March 2008 [Docket Entry #25]. On March 9,

2011, the Court dismissed a number of Relator's claims [Docket Entry #52]. On April 12, 2011, Relator filed a Second Amended Complaint, reasserting those claims the Court had dismissed without prejudice [Docket Entry #58]. On March 15, 2012, in light of new Fifth Circuit case law, the Court granted Relator leave to reassert a claim previously dismissed with prejudice, and Relator filed a Third Amended Complaint doing so [Docket Entry #81]. On July 23, 2012, the Court considered a Motion to Dismiss the Third Amended Complaint, and dismissed one of Relator's claims with prejudice [Docket Entry #91]. The deadline in the Scheduling Order to amend pleadings and join parties expired on December 31, 2012 [Docket Entry #95].

On August 30, 2013, Relator and Defendants jointly moved for leave for Relator to file a Fourth Amended Complaint. Other relators had filed a case against the VistaCare entities, Odyssey, and Gentiva, Inc. (which had purchased Odyssey in 2010), based on alleged FCA violations that occurred after the time period at issue in this case. To promote efficiency, the parties agreed to allow Relator to amend her complaint to extend the relevant time period to 2012, to limit claims against Odyssey to claims against it as a successor-in-interest to the VistaCare entities, and to add claims against Gentiva *only* as a successor-in-interest to Odyssey [Docket Entry #117]. The parties signed an Agreement, dated August 30, 2013, by which Wall agreed she would "not seek to amend the *Wall* Litigation to include claims against Gentiva or Odyssey except as expressly provided for" in the Agreement.[1] Def. Appx. [Docket Entry #260], at A20. In consideration for that promise, Defendants agreed not to challenge Wall's status as a Relator for the extended time period. *Id.*

The Court allowed Relator to file the Fourth Amended Complaint, and Gentiva and

---

[1] The relators in the later-filed FCA case against the VistaCare entities were also parties to the Agreement, which required them to voluntarily dismiss their later-filed case. They did so, dismissing their claims against the VistaCare entities and against Gentiva and Odyssey as successors-in-interest without prejudice, and their other claims against Gentiva and Odyssey with prejudice.

2

Odyssey then moved to dismiss the successor-in-interest claims against them [Docket Entry #126].  In response, Relator sought to file a Fifth Amended Complaint adding alter ego theories of liability against Gentiva and Odyssey [Docket Entry #155].  The proposed complaint alleged that "VistaCare and Odyssey are financially dependent on Gentiva and vice-versa," "that VistaCare is a guarantor of the credit facility entered into in connection with Gentiva's acquisition of Odyssey," that "VistaCare and then Odyssey's employees and patients were incorporated into Gentiva's existing structure after the purchase," and that "Odyssey and Gentiva exercised complete control over the [VistaCare] entities' policies and finances."  Proposed Am. Compl. [Docket Entry #155-1] at 11–12.

On August 4, 2014, the Court dismissed the successor-in-interest claims against Gentiva and Odyssey, finding that the VistaCare entities continued to exist and that neither Odyssey nor Gentiva assumed their obligations or acquired them through an asset purchase ("2014 Order") [Docket Entry #157].  The Court concluded that allowing Relator to amend to replead successor-in-interest liability against Gentiva and Odyssey would be futile, and dismissed the claims *with prejudice*.  *Id.*  The Court also declined to allow Relator to amend to add alter ego liability claims, concluding that the Agreement limited claims by Relator against Gentiva and Odyssey to successor-in-interest liability.

After multiple extensions, the discovery period closed on February 15, 2016.

This nine-year-old case is now fewer than two months from trial, and Defendants have moved for summary judgment.  Relator now seeks to pursue, against the VistaCare entities, Gentiva, and Kindred (which merged with Gentiva in February 2015), new claims for fraudulent transfer, alter ego liability, agency, and concert-of-action liability, as well as a claim for successor-in-interest liability against Kindred.

Relator claims that newly discovered information justifies a late amendment and reconsideration of the Court's 2014 Order. She claims she recently discovered that, at the time she entered into the Agreement, the VistaCare entities had ceased to exist, and the limited liability companies they had been converted into were being drained of assets by Gentiva and Odyssey, such that they were no longer capable of satisfying a judgment. Relator claims she discovered this when, in February 2015, Defendants approached the Government to discuss a potential "ability to pay" analysis. This allegedly "confirmed [R]elator's earlier suspicions" about the VistaCare entities' inability to pay, and Relator requested discovery regarding their finances. Mot. [Docket Entry #248], at 5–6.

In April and June of 2015, Relator's counsel questioned representatives of the VistaCare entities regarding their financial and tax status, and Relator retained a forensic accountant to evaluate the VistaCare entities' documents. In September 2015, that accountant concluded that, for the years 2010 to 2013, the VistaCare entities had generated a net income of approximately ███████████████████████████████████████████, and that Gentiva had made ████████████████████████████████████████████████████████████████ ██████████████████████████. Rel. Appx. [Docket Entry #248-1] at 39–41. Relator claims the adjustments, representing regional, divisional, and corporate-level overhead and debt expense, were fraudulent, because the VistaCare entities "received little or no consideration for these transfers." Mot. at 7. Relator further alleges that the VistaCare entities guaranteed Gentiva's debt obligations, secured by a first priority lien on substantially all of the VistaCare entities' assets and that Gentiva and Kindred used cash flow from the VistaCare entities to reduce their debt ratios. Relator also claims that when Kindred merged with Gentiva, the VistaCare entities guaranteed $1.35 billion in Kindred notes.

4

Relator further maintains that the Agreement should be disregarded because when Relator signed it, Defendants had not disclosed, nor did Relator know, that the VistaCare entities would be unable to satisfy a judgment.

## II. ANALYSIS

### a. *Rule 408 Evidence*

Defendants ask the Court to strike and not consider much of the evidence Relator relies on in her Motion and proposed Fifth Amended Complaint. Defendants claim the information supporting the new claims was obtained in conjunction with meetings between the parties in April and June of 2015, conducted pursuant to Federal Rule of Evidence 408. Rule 408 states that "conduct or a statement made during compromise negotiations about [a disputed] claim" is not admissible "to prove or disprove the validity or amount of [the] claim." Fed. R. Evid. 408.[2] Because the outcome would be the same whether or not the Court considers this evidence, the Court will not strike Relator's evidence under Rule 408.

### b. *Motion to Extend Deadline in Scheduling Order and to Amend Complaint*

Because the deadline for amending pleadings has expired, under Federal Rule of Evidence 16, Relator is required to show good cause to amend. Fed. R. Civ. P. 16. In determining if good cause exists, courts consider: 1) the explanation for the failure to timely move for leave to amend; 2) the importance of the amendment; 3) potential prejudice in allowing the amendment; and 4) the availability of a continuance to cure such prejudice. *S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 536 (5th Cir. 2003); *Reliance Ins. Co. v. La. Land & Exploration Co.,* 110 F.3d 253, 258 (5th Cir. 1997).

---

[2] The meetings were governed by agreements between the parties stating that the meetings were conducted pursuant to Rule 408 and that information disclosed for the meetings was "confidential," and would "not be used by the recipient for any . . . purpose other than settlement negotiations." Def. Appx. [Docket Entry # 260] at A49, A52.

### *1. Explanation for the Failure to Timely Move for Leave to Amend*

Relator has not met her burden of showing good cause for delay. First, Relator knew, or could have discovered, much of the information she now relies on before the deadline for amending pleadings elapsed on December 31, 2012, or at least before filing her Fourth Amended Complaint or before signing the Agreement.

Relator's explanation is that she "had no reason to know that VistaCare was being drained of its cash and income." Mot. at 12. Relator knew, however, that the VistaCare entities had gone through substantial transitions which could impact her ability to collect a judgment from those entities, and to the Court's knowledge, she was not impeded in conducting such an investigation as she desired before signing the Agreement. She knew that Gentiva had acquired Odyssey and the VistaCare entities in 2010. She cites Gentiva's publicly available 10-K, filed in 2011, as evidence that the VistaCare entities guaranteed Gentiva's obligations. Mot. at 9, n.8. She also concedes that Defendants disclosed, no later than August 27, 2013, that the VistaCare entities had transitioned to operate as limited liability companies. Reply [Docket Entry #261-1] at 2.

To the extent that Relator was not fully aware of the VistaCare entities' financial status before the time to amend pleadings expired at the end of 2012, she has not demonstrated diligence in protecting her interests. *See Douglas v. Cafe Herrera IP, LLC*, 2014 WL 4960995, at *2 (N.D. Tex. Oct. 2, 2014) (Lindsay, J.) (denying a motion for leave to amend where the plaintiff "provide[d] no explanation as to why he could not have discovered, with the exercise of due diligence, [the information supporting the proposed amendment] *before* the expiration of the pleading amendment and joinder deadlines"). Relator's accounting expert focuses primarily on transactions between 2010 and 2013. Relator does not argue that she sought information about

the VistaCare entities' finances before she served discovery requests in October 2013.[3]

Had Relator diligently pursued such information in formal discovery during the two years between Gentiva's acquisition of the VistaCare entities and the expiration of the deadline for amending pleadings, she could have discovered most of the information on which she now relies. Had she insisted on this information before she signed the Agreement, presumably she could have obtained it. The only arguably new development alleged is that Kindred merged with Gentiva in early 2015. This development appears to be of limited relevance, as Relator argues the VistaCare entities were already insolvent, and that Kindred "continued" to do what Gentiva was already doing. Mot. at 7–8.

Second, even if Relator could not have discovered some of the key facts she relies on prior to the deadline for amending pleadings or before filing her Fourth Amended Complaint, she could have moved for leave to amend significantly earlier than she did. The most recent development Relator relies on—her own expert's completion of his analysis—took place six months ago. Since then, discovery has closed, Defendants have moved for summary judgment, and the parties have begun filing pre-trial motions.

In sum, Relator filed the current Motion approximately six years after the VistaCare entities allegedly became insolvent, more than three years after the deadline for amending pleadings expired, more than a year after she claims her suspicions regarding Defendants' financial status were "confirmed," eight months after she received documents and testimony from Defendants, six months after her expert's analysis of that information was complete, a month after discovery closed, and three days prior to the deadline for filing dispositive motions.

---

[3] *See* Mot. at 5–6, 6 n.2 (referring to "earlier discovery requests to VistaCare on issues concerning its finances," specifically Relator's Fourth and Sixth Sets of Requests for Production; Relator's Fourth Request was served in October 2013. [Docket Entry #134 at 1]).

By seeking to add non-successor-in-interest claims against Gentiva, Relator also violates the express terms of the nearly three-year-old Agreement which she signed voluntarily.[4]  Relator has not adequately explained her failure to timely amend her complaint.

### 2. *Importance of the Amendment*

Relator has not established that her amendment is sufficiently important to allow now. The sole reason Relator claims her amendment is important is that the current Defendants are not capable of paying a judgment. Mot. at 13. That is not a sufficient justification for allowing the amendment. Relator's chances of prevailing on her current claims are unaffected by her proposed amendments. *See Barnes v. Sanchez*, 2010 WL 5027040, at *2 (N.D. Tex. Dec. 2, 2010) (Lynn, J.).

Further, the Court knows of no reason why, if Relator prevails, it cannot later attempt to collect from Kindred as a successor-in-interest to the VistaCare entities and Gentiva, either through a suit or otherwise. Similarly, Relator's proposed fraudulent transfer claims rest on different allegations from those underlying her existing claims, and she has not explained why she could not pursue such claims, to the extent they are valid, in a separate suit. Thus, the Court concludes that this amendment is not sufficiently important to justify its late assertion.

### 3. *Potential Prejudice in Allowing the Amendment*

Prejudice to Defendants weighs against Relator, because, at this late date the Defendants would need to undertake additional discovery to defend the multiple new claims Relator seeks to assert, including claims that the Agreement is invalid. *Am. Int'l Specialty Lines Ins. Co. v. 7-*

---

[4] Defendants argue Relator also violates the Agreement by seeking to add non-successor-in-interest claims against Kindred, because the Agreement inures to the benefit of Gentiva's successors, and Kindred is such a successor. Def. Appx [Docket Entry # 260] at A22. Relator responds that the Agreement only limits Relator's claims against Gentiva and Odyssey, and, although this may inure to Kindred's benefit, it does not prevent an amendment to add claims against Kindred. The Court does not decide whether the Agreement prevents claims against Kindred. Relator's claims against Kindred are untimely.

*Eleven, Inc.*, 2009 WL 2337356, at *2 (N.D. Tex. July 28, 2009) (Lynn, J.). This would require reopening of fact and expert discovery as well as dispositive motion and pre-trial deadlines, ultimately resulting in further delays. *See Squyres v. Heico Companies, L.L.C.*, 782 F.3d 224, 239 (5th Cir. 2015) (upholding a district court's denial of a motion to amend outside the scheduling order deadline where "not only would the district court have needed to reopen discovery, but it also would have needed to allow another round of dispositive motions"); *The Forest Group Inc. v. Bon Tool Co.,* 2008 WL 2464272, at *2 (S.D. Tex. June 16, 2008) ("Although the Court could reopen discovery and grant a continuance of the remaining deadlines, a continuance would not cure the prejudice from increased expense and unnecessary delay.").

Relator argues that amendment would result in no prejudice to Defendants because the Court can bifurcate her fraudulent transfer, successor-in-interest liability, veil-piercing, agency, and concert of action claims from her existing claims and not allow discovery or litigation to proceed on those claims unless a judgment is rendered against the VistaCare entities. Then, Relator argues, the Court can reopen discovery and set a second trial for consideration of the new claims. This would not prevent prejudice to Defendants. Defendants would be prejudiced by a reopening of discovery and motions practice in this case, even if they took place after an initial trial. Defendants would be severely prejudiced by the uncertainty and expense of multiple trials.

### 4. *Availability of a Continuance*

Relator does not ask for a continuance, and a continuance is not practically available. This case has been pending on the Court's docket for nine years, and the Court has granted numerous extensions. The Court has reserved a substantial amount of time to hear this complex case, resetting multiple cases to do so. In light of pending matters set on its docket, the Court

could not reset this case for trial in the near future.

Relator has not shown good cause for the Court to reopen the deadline for amending pleadings under the Scheduling Order. The Court **DENIES** Relator's Motion for Reconsideration of the Court's 2014 Order and does not reach whether amendment would be allowed under Federal Rule of Evidence 15(a) if there were no scheduling order in this case.

### III.    CONCLUSION

For the reasons set out herein, Relator's Motion for Leave to Amend the Scheduling Order to file her proposed Fifth Amended Complaint is **DENIED**.

This Opinion is filed under seal only because the underlying motion papers were filed under seal. The Court strongly believes this Order should be unsealed. The parties are **ORDERED** to file a joint status report by **April 18, 2016** setting forth their views on whether this Opinion contains any confidential information and should therefore be redacted before being filed publicly. If the parties believe redactions are necessary, they must explain what portions of the Opinion should be redacted and why.

**SO ORDERED**.

April 8, 2016.

_____
**BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS**