IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* MISTY WALL, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:07-cv-0604-M |
| VISTA HOSPICE CARE, INC. d/b/a VISTACARE, and VISTACARE, INC., | § § § § | |
| Defendants. | § § | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is a Motion for Reconsideration of Order Granting Motion for Summary Judgment [ECF #420], filed by Relator Misty Wall. For the reasons stated, the Motion is DENIED.

### **Background**[1]

This is a *qui tam* case brought by Relator against Defendants Vista Hospice Care, Inc. and VistaCare, Inc., on behalf of the United States for alleged violations of the False Claims Act ("FCA"), 31 U.S.C. §3729, *et seq.*, in connection with Medicare Hospice Benefit ("MHB") reimbursement claims submitted by Defendants between 2003 and 2012. Relator alleges that Defendants violated the FCA by: (1) causing patients who were not eligible for the MHB to be certified as eligible and then submitting reimbursement claims for ineligible patients; (2) falsely certifying compliance with the Anti-Kickback Statute, 42 U.S.C. §1320a–7b(b)(1–2); and (3) terminating Relator's employment in retaliation for her complaints that Defendants were committing Medicare fraud. On May 6, 2016, the Court held a hearing on several motions,

---

[1] The background facts of this case are set out in prior opinions of the Court and will not be repeated at length. *See, e.g., United States ex rel. Wall v. Vista Hospice Care, Inc.,* 2016 WL 3449833 (N.D. Tex. Jun. 20, 2016).

1

including Defendants' motion for summary judgment. For the reasons stated on the record at the May 6, 2016 hearing, as well as the reasons set forth in a Memorandum Opinion and Order dated June 20, 2016, *see United States ex rel. Wall v. Vista Hospice Care, Inc.,* 2016 WL 3449833 (N.D. Tex. Jun. 20, 2016), the Court granted Defendants' summary judgment motion as to all of Relator's claims and causes of action, except her claim for retaliation.

After Relator advised the Court that she desired to appeal the summary judgment order, the Court directed the parties to attend mediation. On September 1, 2016, Relator and Defendants mediated their dispute and settled Relator's retaliation claim, subject to certain conditions, including that the Court agree to stay the litigation for six months. The parties subsequently filed a Stipulation of Dismissal, dismissing with prejudice Relator's retaliation claim, and the Court entered an Order staying the case through February 28, 2017.

On March 1, 2017, Relator filed her Motion for Reconsideration on the ground that she has discovered new evidence that is relevant to her claim that Defendants violated the FCA by submitting MHB reimbursement claims for ineligible patients. Specifically, Relator asserts that, on or about November 15, 2016, her counsel discovered a September 20, 2016 press release issued by the Office of Inspector General for the Department of Health and Human Services ("OIG"), describing a $3 million penalty levied against Kindred Health Care, Inc. ("Kindred"), the parent and successor of the Defendant entities in this case.[2] The press release, entitled "HHS's Office of Inspector General Levies Largest Penalty under a Corporate Integrity Agreement against Nation's Biggest Provider of Post-Acute Care," states in its entirety:

> Kindred Health Care, Inc., the nation's largest provider of post-acute care, including hospice and home health services, has paid a penalty of more than $3 million for

---

[2] Defendants have been acquired multiple times since the commencement of this litigation: Odyssey Healthcare, Inc. acquired Defendants in 2008; Gentiva Health Services acquired Odyssey in 2010; and Kindred Healthcare merged with Gentiva in 2015.

failing to comply with a corporate integrity agreement (CIA) with the Federal Government, Department of Health and Human Services' Inspector General Daniel R. Levinson announced today.

It is the largest penalty for violations of a CIA to date, the Office of Inspector General (OIG) said.

The record penalty resulted from Kindred's failure to correct improper billing practices in the fourth year of the five-year agreement. OIG made several unannounced site visits to Kindred facilities and found ongoing violations.

"This penalty should send a signal to providers that failure to implement these requirements will have serious consequences," Mr. Levinson said. "We will continue to closely monitor Kindred's compliance with the CIA."

OIG negotiates CIAs with Medicare providers who have settled allegations of violating the False Claims Act. Providers agree to a number of corrective actions, including outside scrutiny of billing practices. In exchange, OIG agrees not to seek to exclude providers from participating in Medicare, Medicaid, or other Federal health care programs. CIAs typically last five years.

In this case, CIA-required audits performed by Kindred's internal auditors in 2013, 2014, and 2015 found that the company and its predecessors had failed to implement policies and procedures required by the CIA and that poor claims submission practices had led to significant error rates and overpayments by Medicare.

Kindred was billing Medicare for hospice care for patients who were ineligible for hospice services or who were not eligible for the highest level and most highly paid category of service, OIG said.

The Medicare hospice benefits covers services for beneficiaries with terminal illnesses who have life expectancies of six months or less. When patients elect hospice, they agree to strop receiving curative treatment and in its place receive palliative care. Benefits are largely for pain relief, respite care and grief and loss counseling for the patient and the family. Benefits can be provided in a person's home or in an inpatient hospice facility.

> As a result of the findings of CIA-required audits of its claims, Kindred decided to close 18 sites that it characterized as "underperforming" since March 2015. The company has paid a penalty of $3,073,961.98.
>
> OIG also found that in 2016 the company took significant corrective actions, including upgrading internal audits and investigations and tracking resolutions of identified issues.

Rel. Mot. App., Ex. A.

Relator argues that the findings from the CIA-required audits referenced in the September 20, 2016 press release constitute binding admissions by Defendants that Kindred and its predecessors – including Defendants – were billing Medicare for hospice services for patients who were ineligible for those services. Relator further argues that such admissions are highly probative of whether the MHB reimbursement claims at issue were false, and, therefore, the press release and the referenced audit findings represent the sort of new evidence that justifies reconsideration of the Court's prior orders dismissing Relator's FCA claim. Relator also complains that Defendants wrongfully withheld evidence related to the OIG's investigation of Kindred's compliance with the CIA. Relator asks the Court to vacate its orders granting summary judgment, reopen discovery, and enter a new scheduling order that provides for the filing of supplemental expert reports and renewed motions for summary judgment.

Defendants oppose the Motion, arguing that neither the OIG's September 20, 2016 press release announcing the penalty against Kindred nor the internal audits that allegedly support the OIG's decision to impose the penalty would lead to a different summary judgment result. To the extent Relator's Motion raises a discovery dispute, Defendants also object that the Motion is untimely, as Relator never moved to compel any CIA-required audits or related documents. The issues have been fully briefed, and the Motion is ripe for determination.

4

**Legal Standards**

Plaintiff's Motion for Reconsideration is governed by Fed. R. Civ. P. 54(b), which applies where, as here, a party seeks to revise an interlocutory order that adjudicates fewer than all the claims among the parties. Rule 54(b) provides:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). Under Rule 54(b), the Court has broad discretion to reconsider and modify its prior order "for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990). The Court's discretion to reconsider its interlocutory ruling is not limited by the heightened standards of other rules which govern reconsideration of final orders, including Rule 59(e).[3] *Id.*

**Analysis**

As explained in the Court's Memorandum Opinion and Order granting Defendants' summary judgment motion, hospice providers are entitled to receive the MHB for hospice care provided to eligible patients. *Wall*, 2016 WL 3449833, at *2-3. A patient is eligible for the MHB if a physician certifies that the patient is "terminally ill" – that is when "the individual has a medical prognosis that his or her life expectancy is 6 months or less if the illness runs its normal

---

[3] Relief under Rule 59(e) is considered an "extraordinary remedy" that courts should apply "sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). To prevail on a Rule 59(e) motion to alter or amend a judgment, the moving party must show (1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) a manifest error of law or fact. *See Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).

course." *Id.* (citing 42 U.S.C. §1395x(dd)(3)(A), 42 C.F.R. §418.3). The physician's certification must be supported by clinical information and other documentation filed in the medical record. *Id.* (citing 42 U.S.C. §1395(a)(7), 42 C.F.R. §418.22). In this lawsuit, Relator pursued a theory that Defendants violated the FCA by submitting claims for reimbursement of hospice care expenses for patients who were not eligible for the MHB. Relator argued that the claims for reimbursement were false because the necessary physician certifications erroneously certified that the patients were terminally ill.

To prove falsity, Relator relied on (1) expert opinion by a practicing geriatric, hospice, and palliative care specialist and family physician, Dr. Karl Steinberg, and (2) evidence of a corporate scheme to admit and maintain ineligible patients on hospice. Dr. Steinberg reviewed a sample of patient charts and medical files associated with MHB reimbursement claims submitted by Defendants and concluded that the certifying physicians had erred in evaluating the patients' life expectancies. According to Dr. Steinberg, the patients in the sample were not sick enough to be considered terminally ill. As the Court explained, however, "[a] testifying physician's disagreement with a certifying physician's prediction of life expectancy is not enough to show falsity." *Id.* at *17. The Court therefore determined that "Dr. Steinberg's opinion that certain of Defendant's patients were ineligible for hospice is insufficient to create a fact issue as to whether physician certifications and resulting claims were false." *Id.* at *18. The Court further rejected Relator's argument that Dr. Steinberg's opinions, together with evidence of an alleged scheme by Defendants to aggressively enroll eligible patients and evidence that a few of Defendants' employees falsified some medical records, created a fact issue on whether any false claims were submitted. *Id.* Relator failed to tie her "scheme" evidence to the submission of a single false claim, and that failure was fatal to her FCA allegations. *Id.* at *18, 19. ("What Relator is missing

6

here is a causal link between Defendants' policies, a few instances where medical information was allegedly falsified, and actual false or fraudulent certifications and claims."). Ultimately, the Court granted Defendants' summary judgment motion on Relator's FCA claims because she failed to adduce sufficient evidence to raise a genuine fact issue as to whether Defendants caused the submission of false claims for MHB reimbursement.

By her motion, Relator argues that the September 20, 2016, press release, including the broad statement by OIG that "Kindred was billing Medicare for hospice for patients who were ineligible for hospice services," is new evidence that justifies reconsideration of the Court's summary judgment decision because it corroborates Dr. Steinberg's ineligibility opinions and constitutes new evidence supporting her claim of falsity. Contrary to Relator's assertion, the press release does not "corroborate" Dr. Steinberg's ineligibility opinions. Dr. Steinberg opined that Defendants' physicians erroneously certified that certain patients were eligible for hospice services, when no reasonable physician would have made the same determination. The press release states that internal audits performed by Kindred found that the company and its predecessors failed to implement policies and procedures required by the CIA and that poor claims submission practices led to significant error rates and overpayments by Medicare. The press release does not indicate that the poor claims submission practices that led to the overpayments had anything to do with physician certifications, much less that the certifications and resulting claims were false because physicians certified patients as terminally ill without exercising appropriate clinical judgment.

The press release also does not constitute new evidence supporting Relator's claim of falsity. Materials submitted in support of Relator's Motion for Reconsideration show that the CIA-required audits referenced in the OIG's press release are "Eligibility Review Reports"

prepared by an "Eligibility Review Team," which are subsequently reviewed and verified by an "Independent Review Organization" ("IRO") that in turn prepares "Verification Reports." Both the Eligibility Review Reports and Verification Reports examine hospice patient records and MHB reimbursement claims submitted by Kindred or its predecessors to determine: (1) whether a certification of terminal illness was made for the period in which the claim was filed; (2) whether the evidence in the medical record supports the terminal diagnosis; and (3) if the claim included continuous care services, whether the record supports a determination that the patient was eligible for continuous care. Relator contends the audit findings, to the extent the Eligibility Review Team and/or the IRO determined the medical record fails to support the terminal diagnosis, are new evidence of falsity. However, the Court previously held "[i]f all that was necessary to prove falsity was to put up a medical expert to review medical records and provide an opinion at odds with that of the certifying physician, hospice providers would be subject to potential FCA liability 'anytime [a relator] could find a medical expert who disagreed with the certifying physician's clinical judgment.' That situation would be directly at odds with the assurances given by CMS that doctors need not fear the exercise of their medical judgment as to the future course of a terminal patient." *United States ex rel. Wall v. Vista Hospice Care, Inc.*, 2016 WL 3449833, at *18 (N.D. Tex. Jun. 20, 2016) (quoting *United States v. AseraCare Inc.*, 2016 WL 1270521, at *3 (N.D. Ala. 2016). Like Dr. Steinberg's opinions, the audit findings are not sufficient to raise a genuine issue as to falsity.

Additionally, Relator has not shown that the CIA-required audits examined any MHB reimbursement claims that Defendants actually submitted for any patient during the relevant claims period. Relator represents that she confirmed through a U.S. Attorney monitoring this case for the Department of Justice: (1) the audits that Kindred provided to the OIG included

audits from the years 2011-12 and 2012-2013, (2) Kindred audited patient charts from seven VistaCare hospices, and (3) patients from at least one VistaCare hospice were included in the first year of the audit. However, this information does not establish a link to any of the specific records or claims at issue, and any assertion by Relator that this information could lead to evidence of an actual false claim within the relevant period is wholly speculative.

With regard to Relator's complaints that Defendants and former parties Odyssey and Gentiva engaged in discovery misconduct by withholding documents related to the CIA, such complaints are untimely. Relator concedes that the existence and terms of the CIA were revealed to her during discovery. Defendants objected to producing documents regarding the CIA-required audits, but Relator never filed a motion to compel. The time for seeking additional discovery has long since passed. Reopening discovery at this juncture in the litigation and allowing the parties to file supplemental expert reports and renewed motions for summary judgment does not advance the interest of justice in moving this case toward final resolution. Relator does not explain how she could salvage Dr. Steinberg's opinion, which the Court found to be "rife with errors;" nor does Relator argue that she could identify a new expert who could offer an opinion that would result in a different summary judgment conclusion. Relator's conjecture that additional discovery may reveal evidence of false claims within the relevant period does not justify vacating the Court's summary judgment opinion.

Accordingly, the Court, in its discretion, denies Relator's Motion for Reconsideration.

## Conclusion

Relator's Motion for Reconsideration [ECF #420] is DENIED.

SO ORDERED.

Dated: November 14, 2017.

BARBARA M.G. LYNN
CHIEF JUDGE